CARL SANDSTROM and MARGARET SANDSTROM,
Plaintiffs-Appellees, *v.* CYRIL C. LARSEN and
MARJORIE H. LARSEN, Defendants-Appellants

NO. 6255

AUGUST 23, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

This is an action for a mandatory injunction to require defendants-appellants Cyril and Marjorie Larsen (hereinafter appellants) to remove the top story of their residential structure. The court below issued the mandatory injunction pursuant to its finding that appellants' structure violates a restrictive height covenant applicable to appellants' property.

Appellants first contest the trial court's finding that there was no abandonment of the restrictive covenant. Alternatively, they assert that the court below erred both in failing to take into account the relative degree of hardship between the parties and in refusing to permit appellants to introduce evidence of alternative remedies. We are unable to accept appellants' arguments. Consequently, we affirm the issuance of the mandatory injunction.

Appellants are the owners of a residential lot in the "Kaneohe Heights" subdivision in Kaneohe, City and County of Honolulu. The land which encompasses the subdivision was originally owned by August and Alice Souza, who subdivided and developed the property. In 1956, each of the original 30 lots in the subdivision was made subject by the Souzas to a duly recorded "Declaration of Restrictive Conditions". The declaration states that "said covenants shall run with the land and be binding upon and inure to the benefit of the present owners of said land and upon and to all subsequent owners of said land."

The declaration includes, *inter alia*, the following restrictions:

1. No lot shall be used except for residential purposes. No building (other than the existing dwelling on Lot 26) shall be erected, altered, placed or permitted to

remain on any lot other than one detached single-family dwelling *not to exceed one and one-half stories in height* and a private garage for not more than two cars. [Emphasis supplied.]

In 1961, plaintiffs-appellees Carl and Margaret Sandstrom (hereinafter appellees) purchased a home in the subdivision. They did not, however, occupy the home themselves until some time in 1969. The Declaration of Restrictive Conditions was made a part of and incorporated by reference in appellees' deed.

In 1964, appellants purchased their home, which is next door to and on the downhill side of appellees' home. Appellants' deed also incorporates by reference the same Declaration of Restrictive Conditions.

Additional lots abutting the hillside adjacent to the Kaneohe Heights subdivision were subsequently subdivided and sold by the Souzas. However, these lots were not subjected to the one-and-one-half story restrictive height covenant.

On June 2, 1975, appellants' one-story home was partially destroyed by fire. Appellants subsequently consulted an architect, who prepared plans for the reconstruction of the home. Appellants then proceeded to have their home rebuilt, utilizing a portion of the original structure.

Both prior to and immediately after construction began, some of appellants' neighbors discussed the existence of the one-and-one-half story height restriction with appellants. On September 11, 1975, it first became evident to appellees that appellants' reconstructed home was going to be two stories high. On September 16, 1975, appellee Margaret Sandstrom hand-delivered a letter from James H. Case, appellees' attorney, reminding appellants of the restrictive height covenant and requesting that appellants "cease construction until the issue of the height restriction is resolved." The letter also stated that appellees were considering legal action as a result of appellants' apparent violation of the restrictive covenant.

At no time thereafter did appellants cease construction of the upper story of the house. The completed two-story home presently obstructs a portion of appellees' view.

Appellees thus commenced this action, seeking only a mandatory injunction. A jury waived trial, during which the trial judge personally viewed the premises involved, was held in January, 1976. Pursuant to findings of fact and conclusions of law filed on March 8, 1976, the court below issued a mandatory injunction and judgment ordering appellants to remove "the portions of their house" which violate the restrictive height covenant.

## I. SCOPE OF REVIEW.

Appellants originally urged in their briefs that this Court is authorized and *required* in an equity case to independently review all questions of fact and law which arise from the evidence in the record. However, in oral argument appellants' counsel retreated from that position and conceded that our decision in *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), essentially resolves any question regarding the proper scope of review in the instant case. While we agree with counsel for appellants that *Jenkins* effectively disposes of appellants' original position, we wish to briefly elaborate on the issue of the applicable standard of review in a case of this nature.

In *Jenkins, supra,* we indicated that the granting of equitable relief is a matter "addressed to the sound discretion of the trial court, and its decision will not be set aside unless manifestly against the clear weight of the evidence." *Id.* at 598, 574 P.2d at 1342. This pronouncement is consistent with the express provision in HRCP Rule 52(a) that "[f]indings of *fact* shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (Emphasis supplied).

Pursuant to HRCP Rule 52(a), an appellate court will not undertake an independent, de novo review of the record in order to determine whether different factual conclusions should have been reached by the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 (1969) (interpreting Federal Rule 52(a)). Appellants' earlier reliance

on *Christian v. Waialua Agricultural Co.*, 31 Haw. 817, *appeal dismissed*, 52 F.2d 847 (9th Cir. 1931), for the proposition that this Court may, in an equity case, undertake an independent review of the evidence and make its own findings, was not well-placed. Although it is true that *Christian* has never been explicitly overruled by any subsequent Hawaii cases, the adoption in 1953 of HRCP Rule 52(a) has removed any vitality from the holding in *Christian* that in any equity case "the supreme court nevertheless is authorized and has always exercised its right and duty to weigh the evidence and to make its own findings." 31 Haw. at 821. This Court has since applied the "clearly erroneous" standard of HRCP Rule 52(a) in determining the propriety of the trial court's findings in *Shoemaker v. Takai*, 57 Haw. 599, 561 P.2d 1286 (1977), which was an action for a mandatory injunction.[1]

Under HRCP Rule 52(a), then, it is not enough that we might construe the facts or resolve the ambiguities differently. *United States v. National Association of Real Estate Boards*, 339 U.S. 485, 495 (1950). Indeed, "[t]he question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did," *Zenith Radio, supra*, at 123, but whether it is left with "a definite and firm conviction that a mistake has been made by the trial court." *In re Application of Kamakana*, 58 Haw. 632, 636, 574 P.2d 1346, 1349 (1978); *Associated Engineers & Contractors, Inc. v. State*, 58 Haw. 187, 194, 567 P.2d 397, 404, *reh. denied*, 58 Haw. 322, 568 P.2d 512 (1977); *Shoemaker v. Takai, supra*, 57 Haw. at 601, 561 P.2d at 1288. Furthermore, the burden is on the appellant to persuade the reviewing court that the findings of the trial court are "clearly erroneous". *Shoemaker v. Takai, supra*, 57 Haw. at 601, 561 P.2d at 1288.

Any assertion that this Court will review de novo the findings of a trial court sitting without a jury in an equity case is, therefore, plainly incorrect.

---

[1] Beginning with *United States v. United States Gypsum Co.*, 333 U.S. 364, *reh. denied*, 333 U.S. 869 (1948), the "clearly erroneous" standard of Rule 52(a) has been applied in equity cases in the Federal courts. *See generally* 5A MOORE'S FED. PRAC. ¶ 52.03[1](2d Ed. 1977); WRIGHT & MILLER, FED. PRAC. & PROC.: Civil § 2571 (1971).

## II. ABANDONMENT.

Appellants do not contest the trial court's finding that their home is presently a two-story structure under the definitions contained in the Building Code of the City and County of Honolulu. Thus, appellants concede for the purposes of argument that their structure violates the literal terms of the restrictive height covenant. Hence, no questions relating to any possible ambiguity of the phrase "one-and-one-half stories in height" have been raised in this appeal.[2]

Appellants contend that the court below erred in refusing to find that the restrictive height covenant was abandoned. They point to the presence of other structures in the subdivision which are two to three stories in height, and they claim that the presence of these structures evidences acquiescence in and a mutual disregard of violations of the restrictive height covenant. Therefore, appellants argue that the restrictive covenant can no longer be enforced.

The question of abandonment is one of fact, and the burden of proof on this issue is on the defendant. *McDonough v. W. W. Snow Construction Co.*, 131 Vt. 436, 444, 306 A.2d 119, 124 (1973). The court below found that the purpose of the height restriction was to protect the view and privacy of the homeowners in Kaneohe Heights. Based upon a consideration of the language of the covenants as a whole, such an interpretation was entirely reasonable in view of the plain, ordinary and popular meaning of the language utilized in the covenants, as well as the general plan and appearance of existing structures established in the tract. *Collins v. Goetsch,* 59 Haw. 481, 583 P.2d 353 (1978).[3]
1978).[3]

---

[2] The instant case differs in large measure, therefore, from *Collins v. Goetsch,* 59 Haw. 481, 583 P.2d 353 (1978), in which we held that ambiguous language in a restrictive covenant was to be strictly construed, thus necessitating the vacation of the trial court's permanent injunction ordering the defendants to utilize their structure as a single-family dwelling and not as a duplex.

[3] There is no question that restrictive covenants limiting the height of homes are enforceable for the purpose of protecting a view. *McDonough, supra,* 131 Vt. at 442, 306 A.2d at 123; *see King v. Kugler,* 197 Cal.App.2d 651, 17 Cal.Rptr. 504 (1961). *See also Snashall v. Jewell,* 228 Or. 130, 363 P.2d 566 (1961).

In order to support a finding of abandonment, it must be shown that the lot owners of the subdivision acquiesced in substantial and general violations of the covenant within the restricted area. *Gibbs v. Cass*, 431 S.W.2d 662, 669-70 (Mo.App. 1968); *Simon v. Henrichson*, 394 S.W.2d 249, 255 (Tex.Civ.App. 1965, writ ref'd n.r.e.). The evidence in the instant case fails to reveal that the lot owners in Kaneohe Heights acquiesced in such "substantial and general" violations of the restrictive height covenant so as to have abandoned that restriction. First, the two-story structure on Lot 26 of the subdivision was specifically exempted from the restrictive height covenant when the declaration of covenants was originally filed by the Souzas. Second, the two-story structure on Lot 30 of the subdivision was subsequently exempted from the height restriction because that lot is located next to the hillside which traverses the side and rear perimeters of the subdivision. The structure thus does not interfere with the view of any other homeowners in the subdivision. Third, the remaining three lots on which structures of more than one story have been built are also located against the hillside at the rear of the subdivision. These three lots are a part of the property developed by the Souzas subsequent to the original subdivision of Kaneohe Heights, and were never covered by the terms of the original height restriction due to their location next to the hillside.

Aside from the home on Lot 26, therefore, all of the other Kaneohe Heights homes of two or more stories have been built on lots which are so situated that these homes do not interfere with the view of any other homeowners in the subdivision. Hence, even if the three multi-story homes built on the lots which are a part of the later subdivision *were* covered by the restrictive height covenant, the fact that these homes, as well as the home on Lot 30, were allowed to be built does not in any way serve to defeat the purpose for which the covenant was imposed. The view and privacy of the homeowners in Kaneohe Heights have not been destroyed, and the presence of these few multi-story homes does not, in our opinion, constitue such a "substantial and general" acquiescence on the part of the lot owners in the subdivision so as to

support a finding of abandonment.

Appellants have also advanced a theory of change of conditions in support of their assertion that the covenant should no longer be enforced. They contend that the construction of a 13-story condominium building in close proximity to Kaneohe Heights, which results in a partial obstruction of the view from the subdivision, necessitates a finding that the covenant should not be enforced. However, in order to warrant a refusal to enforce a restriction, any "change in conditions must be so great or radical as to neutralize the benefits of the restriction and destroy its purpose." *South Shore Homes Association, Inc. v. Holland Holiday's,* 219 Kan. 744, 753, 549 P.2d 1035, 1044 (1976). Moreover, if the benefits of the original restriction can still be realized for the protection of the subdivision properties, no sufficient change of conditions will be recognized so as to defeat the restriction. *Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400, 404-05 (Tex.Civ.App. 1960, writ ref'd).

Despite the construction of the high-rise condominium, which, incidentally, the homeowners in Kaneohe Heights possessed no control over, a considerable portion of the view remains available to the residents of the subdivision. We agree with appellees that instead of diminishing the value of the restrictive height covenant, the presence of the condominium in fact enhances the protective value of the height restriction by making the remaining view of appellees and other residents of the subdivision all the more valuable and worthy of preservation. Therefore, appellants' argument that the restriction should no longer be enforced due to a change in conditions of the surrounding neighborhood cannot be sustained.

### III. RELATIVE HARDSHIP AND ALTERNATIVE REMEDIES.

Alternatively, appellants urge that the court below erred in issuing the mandatory injunction without first considering the relative hardship between the parties. Appellants also contend, in a related argument, that the court below erred in refusing to allow them to present evidence of alternative

remedies, such as damages, before deciding to grant the mandatory injunction. Both contentions can be disposed of together.

A basic consideration in the enforcement of restrictive covenants "is that they are enforceable through the equitable relief afforded by an injunction." *McDonough v. W. W. Snow Construction Co., supra,* 131 Vt. at 441, 306 A.2d at 122. As such, because the court is enforcing an established legal right embodied in the covenants, "the relative hardships to the parties has no application to the award of final relief to the plaintiff." *Id.*

In *McDonough v. W. W. Snow Construction Co., supra,* the plaintiffs sued to enjoin further construction of a two-story house and to require the removal of the second story. The restrictive covenant in that case limited homes in the subdivision to a height of one story. In affirming the issuance of permanent and mandatory injunctions, the Supreme Court of Vermont rejected the defendant's contention that the relative hardship of the parties should be considered whenever mandatory injunctive relief is sought for the violation of a restrictive covenant. The court stated that because the enforcement of an established legal right, embodied in the covenant, was involved, the relative hardship between the parties was irrelevant to the granting of injunctive relief. Of particular significance to the court in *McDonough* was the fact that the defendant actually or constructively knew of the restriction, and yet proceeded with construction of the second story. As such, the court held that the defendant "acted at its own peril without first obtaining a resolution of the covenant", for "he who takes land with notice of such a restriction will not in equity and good conscience be permitted to act in violation of the restriction." *Id.*

In the instant case, there was no dispute that appellants were aware, both actually and constructively, of the one-and-one-half story height restriction at the time they purchased their property. In addition, testimony was adduced at trial which indicates that several neighbors discussed the existence of the height restriction with appellants prior to their commencing reconstruction of the home. Appellants

nevertheless proceeded with construction of the second story, and they continued with the construction until completion despite the fact that appellees had warned appellants of impending legal action if appellants did not cease construction. Construction of the second story was in fact continued and completed during the pendency of this suit. Hence, appellants acted at their own risk in completing their two-story structure. *Id.; Welch v. Barrows,* 125 Vt. 500, 508-09, 218 A.2d 698, 705 (1966).

Appellants' purported claim of innocence, based upon their explanation that they relied upon the advice of their architect, is unpersuasive. The advice given by the architect, who concluded that appellants' reconstructed house would be in compliance with the terms of the restrictive covenant, by no means constituted a final resolution of the covenant question. And although appellants may have mistakenly relied upon the incorrect advice of their architect, such a mistaken assumption that they were acting legally and properly did not confer immunity upon them from the right of appellees or any other homeowners in the subdivision to seek equitable enforcement of the restriction. *See Dickstein v. Williams,* ___Nev.___,___, 571 P.2d 1169, 1171 (1977).

We are convinced that where a property owner "deliberately and intentionally violates a valid express restriction running with the land *or intentionally 'takes a chance,'* the appropriate remedy is a mandatory injunction to eradicate the violation." (Emphasis added). *Peters v. Davis,* 426 Pa. 231, 238, 231 A.2d 748, 752 (1967). Appellants took just such a chance in proceeding with construction of the second story of their home. Therefore, mandatory injunctive relief was available to appellees without the necessity of consideration by the court below of the relative hardship between the parties.

Insofar as appellants' contention that the court below should have allowed them to present evidence of alternative remedies is concerned, we note that appellants themselves did not attempt to present such evidence during the course of the trial. The issue of alternative remedies appears to have been first advanced by appellants when the court below was

in the midst of announcing its oral decision subsequent to trial.

In any event, we have already held that when either a deliberate and intentional or an assumed-risk violation of a restrictive covenant is shown, a plaintiff is entitled to mandatory injunctive relief regardless of the relative damage which may ensue from the injunction. Furthermore, it is held that a breach of a restrictive covenant may be enjoined even absent a showing of the amount of damage which has in fact been caused by that breach. *Marshall v. Adams,* 447 S.W.2d 57 (Ky.App. 1969); *see Dickstein v. Williams, supra;* 7 G. THOMPSON, LAW OF REAL PROPERTY § 3172 (1962 Repl.). Clearly, then, mandatory injunctive relief was the proper remedy to which appellees were entitled, and we hold that the trial court properly ordered the removal of the top story of appellants' residence without allowing appellants to introduce evidence relating to possible alternative remedies.

In sum, we find that the judgment of the court below did not constitute an abuse of discretion and was not manifestly against the clear weight of the evidence. *Jenkins v. Wise, supra.*

### IV. MOTION TO REMAND.

Lastly, appellants have moved to remand this case to the trial court for a hearing on additional facts, or alternatively, for a consideration by this Court of those said facts. It appears, although we make no definitive findings at this stage, that subsequent to the entry of the judgment below, appellees sold their residence to a third party. Appellants thus contend that appellees are without standing to continue this appeal.

We decline to rule on appellants' motion. Instead, having affirmed on the merits the judgment of the court below, we leave it to appellants to challenge in a future proceeding below appellees' standing to enforce the mandatory injunction.

We do note that if appellees have in fact sold their property, there may be a valid question as to whether appellees continue to be the proper parties for purposes of the enforce-

ment of the mandatory injunction. There is some indication that a party, after selling all interest in its relevant property, can no longer proceed with enforcement of *injunctive* relief granted in its favor in connection with rights attaching to that property. *Walker v. Providence Journal Co.*, 493 F.2d 82, 85-86 n.6 (1st Cir. 1974); *Mendez v. Bowie*, 118 F.2d 435, 439-40 (1st Cir.), *cert. denied sub nom. Rios v. Bowie*, 314 U.S. 639 (1941).[4]

However, even if appellees may no longer procedurally be the proper named parties for purposes of enforcing the injunction, HRCP Rule 25(c) provides that their successor-in-interest may be substituted as a named party and may continue to seek enforcement of the current injunction. The provisions of HRCP Rule 25(c) must, in any event, be complied with before the successor-in-interest can step into appellees' shoes and enforce the injunction.[5]

Absent compliance with the requirements of HRCP Rule 25(c), appellants are free to seek, at the time that appellees seek to enforce the injunction, a determination that appellees are no longer the properly named parties plaintiff and, therefore, may no longer enforce the mandatory injunction.

The mandatory injunction and judgment of the court below is in all other respects affirmed.

*John R. Williams (Chee, Hashimoto, Lee & Oshiro of counsel) for Defendants-Appellants.*

---

[4] Of course, such a party may continue to seek monetary relief for past damages suffered. *See Walker v. Providence Journal Co., supra; Mendez v. Bowie, supra.*

[5] HRCP Rule 25(c) provides as follows:

*Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

In order for a transferee of an interest to be substituted as a party, a motion for substitution must first be made. Such a motion may be made by any currently named party or by the person or entity sought to be added as a party. *See Montecatini Società Generale v. Humble Oil & Refining Co.*, 261 F.Supp. 587, 591 (D. Maryland 1966); 3B MOORE'S FED. PRAC. ¶ 25.08, at 25-326 (2d Ed. 1977); WRIGHT & MILLER, FED. PRAC. & PROC.: Civil § 1958, at 667 (1972).

*Susan P. Walker (Carlsmith, Carlsmith, Wichman and Case* of counsel) for Plaintiffs-Appellees.