ROBERT DeMUND and ELIZABETH DeMUND, Plaintiffs-Appellees, *v.* PATRICIA CHONG LUM, JOHN D. JOHNSON and SONJA JOHNSON, Defendants-Appellants, and WILIWILINUI RIDGE SUBDIVISION, a joint venture, HAROLD MINORU AOKI and KOICHI IMAI, Defendants

NO. 9372

(CIVIL NO. 49351)

OCTOBER 29, 1984

BURNS, C.J, HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

John and Sonja Johnson (Johnsons) and Patricia Chong Lum (Lum), defendants-appellants (collectively Appellants), appeal from a judgment entered on April 8, 1983, in favor of Robert and Elizabeth DeMund (DeMunds), plaintiffs-appellees, enjoining Appellants from violating a restrictive covenant in the deeds to their properties.[1] Johnsons also appeal from a subsequent order entered on November 23, 1983, holding them in contempt of court for violating the injunction. We affirm the trial court except for the award of attorney's fees. The appeals will be discussed seriatim.

### FACTS

The essential facts are undisputed. Wiliwilinui Ridge Subdivision was developed in the late 1960s by a joint venture of the same name. All parties to this proceeding have owned lots therein since 1971. The deeds received by the parties contain 21 restrictive covenants. The covenant pertinent to this case reads:
2. USE OF PREMISES: The lots within WILIWILINUI RIDGE SUBDIVISION are to be used as a single-family residence only.

---

[1] This is the second appeal in this matter. In the first appeal, we reversed a summary judgment in favor of Lum. *DeMund v. Lum,* 1 Haw. App. 443, 620 P.2d 270 (1980). On remand, the complaint was amended to add Johnsons as defendants.

After initial construction, the individual residences were renovated by each Appellant so as to provide additional quarters for rental purposes with separate entrances, bedrooms, living rooms, bathrooms and partial kitchens. Since 1975 Appellants rented those additional quarters to various persons unrelated to them.

DeMunds brought this action to enjoin the rentals as violative of covenant no. 2. After a bench trial, the trial court entered findings of fact and conclusions of law on February 28, 1983, and judgment on April 8, 1983, enjoining Appellants from renting "any portion of" their homes and awarding attorney's fees and costs. Appellants appealed in a timely manner.

On September 8, 1983, DeMunds petitioned the court for an order of contempt against Appellants alleging that they had violated the injunction. After an evidentiary hearing, the trial court found only Johnsons in contempt of court and again awarded attorney's fees and costs. Johnsons' appeal was filed on December 20, 1983.

The appeals were ordered consolidated on January 30, 1984.

## STANDARD OF REVIEW

The standard of appellate review in the instant case is clear. A trial court's findings of fact will not be set aside on appeal unless clearly erroneous. Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1981). *Gadd v. Kelley,* 66 Haw. 431, 667 P.2d 251 (1983); *Haworth v. State,* 3 Haw. App. 281, 650 P.2d 583 (1982). Findings are clearly erroneous where they are not supported by substantial evidence in the record, *Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977); *Stewart v. Smith,* 4 Haw. App. 185, 662 P.2d 1121 (1983); *Yorita v. Okumoto,* 3 Haw. App. 148, 643 P.2d 820 (1982), or where the appellate court is left with a definite and firm conviction that a mistake has been made. *Waugh v. University of Hawaii,* 63 Haw. 117, 621 P.2d 957 (1980); *Kim v. State,* 62 Haw. 483, 616 P.2d 1376 (1980); *Block v. Lea,* 5 Haw. App. 266, 688 P.2d 724 (1984); *Stewart v. Smith, supra.*

Substantial evidence is defined as "credible evidence of sufficient quantity and probative value to justify a reasonable man in reaching a conclusion." *Hong v. Kong,* 5 Haw. App. 174, ____, 683 P.2d 833, 836 (1984).

A trial court's conclusions of law, however, are freely reviewable by this court. *Block v. Lea, supra.*

## APPEAL FROM APRIL 8, 1983 JUDGMENT

The issues raised by the appeal from the April 8, 1983 judgment and our answers are as follows:

(1) Whether the trial court's findings of fact nos. 7 and 9 are clearly erroneous? No.

(2) Whether the trial court's conclusions of law nos. 4 through 8, inclusive, are correct? Yes.

(3) Whether the trial court erred, in conclusion of law no. 9, in awarding attorney's fees?[2] Yes.

(4) Appellants' argument that the restrictive covenant is unconstitutional and should not be enforced was not raised in the court below and we will not discuss it here. *Dowsett v. Cashman,* 2 Haw. App. 77, 625 P.2d 1064 (1981).

1.

Findings of fact nos. 7 and 9 are not clearly erroneous. Those findings read as follows:

7. At the time of the sale of the first lot, the definition of the term "single family" contained in the "Use Covenant", was understood by the developers of Wiliwili Nui Ridge Subdivision Joint Venture to be identical to that of the 1969 Comprehensive Zoning Code[3] of the City and County of Honolulu, State of Hawaii which states: [footnote added]

Section 21-1.10 *Family.* The term 'family' shall mean one or more persons, all related by blood, adoption or marriage, occupying a dwelling unit or lodging unit, provided that domestic servants employed only on the premises may

---

[2] Although in their points on appeal Appellants cite as error the award of costs, their argument is addressed only to attorney's fees. Furthermore, the award of costs is within the discretion of the trial court. Rule 54(d), Hawaii Rules of Civil Procedure; *Bishop Trust Co. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 656 P.2d 1353 (1983).

[3] Chapter 21, Revised Ordinances of Honolulu (1978).

be housed on the premises, and included as a part of the family, provided further, that in lieu of the above-family and domestic servants, no more than five (5) unrelated persons may occupy a dwelling or lodging unit . . .

9. There is no evidence that the developers intended to modify the Use Covenant by incorporating as part of the definition of "single family" that portion of Article 5, Residential Districts which states:

A. Section 21-501(b) *Accessory uses and structures.* Uses and structures which are customarily accessory and clearly incidental and subordinate to principal uses and structures, including: . . . (3) Roomers may be accessory to a family composed of persons related by blood, adoption or marriage, provided that such roomers may not exceed a total of three persons.

Further, there is no credible evidence that the parties relied on such a modification.

As a result of the first appeal herein, the proceedings below focused on the meaning of the term "single-family residence" as used in covenant no. 2.[4] In attempting to sort out that meaning, the parties resorted to extrinsic evidence.

Findings of fact nos. 7 and 9 relate to the intent of the developer[5] and the only evidence on that point was the affidavit of

---

[4] In the first appeal we said, in response to appellants' (appellees here) argument:

We think facts as to the manner of use, the details of the "apartment" which may not be undisputed, the intentions of the original parties to the covenants as to their meaning, the zoning ordinance in effect when the covenants attached to the land and others should all be ascertained before the phrase in question is construed by the court.

*DeMund v. Lum*, 1 Haw. App. at 446, 620 P.2d at 272-73.

[5] The court's finding regarding the evidence of the understanding of the parties to this action is finding of fact no. 11, which reads as follows:

11. DeMunds expressly relied upon the common and ordinary meaning of "single-family", i.e., relationship by blood, marriage, or adoption. Johnsons had no particular knowledge or intention with regard to the Use Covenant at the time they purchased Lot 33. Mrs. Lum claims she was conversant with the CZC and relied on the CZC definition of "family". None of the parties was expressly told by the developers or their agents exactly what was meant by the term "single-family" in the Use Covenant.

The finding is not challenged by Appellants.

Duke T. Kawasaki, a member of the Wiliwilinui Ridge joint venture, who stated:

> That affiant has been and is one of the persons charged by the joint venture to enforce the restrictive covenants in the deeds of all lots in the Subdivision;
>
> That, at the time of sale of the first lot, the definition of the term "single-family" of the restrictive covenant "The lots within WILIWILI NUI RIDGE SUBDIVISION are to be used as a single-family residence," was understood among the parties to be that of the Comprehensive Zoning Code of the City and County of Honolulu, State of Hawaii, hereinafter referred to as "CZC", which states:
>
> > Family. The term 'family' shall mean one or more persons, all related by blood, adoption, or marriage, occupying a dwelling unit or lodging unit, provided that domestic servants employed only on the premises, may be housed on the premises and included as part of the family, provided further, that in lieu of the above family and domestic servants no more than five unrelated persons may occupy a dwelling or lodging unit. . . .

Appellants argue, however, that DeMunds had the burden of proving that the developer did not intend to include § 21-501(b) as part of the definition. We disagree.

Within the Comprehensive Zoning Code, § 21-501(b) does not enlarge the meaning of "family" as expressed in § 21-1.10, but merely indicates what further uses may be included in a district zoned for single-family residential purposes.

DeMunds, as plaintiffs, had the burden of proving the meaning of the term in question through evidence of the intent of the developer. They did so. The burden of proving that the developer intended to include § 21-501(b) as part of the meaning of "single family" was on Appellants.

2.

Appellants next challenge the trial court's conclusions of law nos. 4 through 8, inclusive,[6] which read:

---

[6] Although some of these "conclusions of law" appear to be findings of fact, it is not necessary to discuss them from that standpoint in view of Appellants' argument regarding them, *infra*. Moreover, they are not clearly erroneous.

4. The definition of "family" intended by the developers at the time of the development of Wiliwili Nui Ridge Subdivision and by DeMunds and Lum at the time they purchased their lots was the same as in the relevant portion of the CZC, i.e. persons related by blood, marriage or adoption.

5. There is no credible evidence that the developers or the parties intended or believed that the Use Covenant was to be interpreted to include "roomers" as part of a "single family".

6. The roomers of Lum and Johnsons do not fit within the definition of "family" nor can they be classified as domestic servants. Thus, the rentals by Lum and Johnsons were violations of the Use Covenant.

7. The most feasible means of preserving the neighborhood as contemplated by the developers and provided for in the restrictive covenants is to enjoin the nonconforming rental activities of Lum and Johnsons.

8. Judgment should issue in favor of DeMunds in the form of a permanent injunction restraining Lum and Johnsons from any further violation of the Use Covenant.

Appellants argue that the conclusions are incorrect because the construction given to covenant no. 2 by the trial court runs counter to the rule that where restrictive covenants are ambiguous, they should be so construed as to favor the free use of land. In our view, the rule is inapplicable in this case.

We are not persuaded by Appellants' arguments nor by the authorities cited by them. This is because in the final analysis, the rule regarding construction favoring the free use of land is not applicable in a case such as this where the evidence of intent is clear and unrefuted.

The fundamental rule in construing restrictive covenants is that the intention of the parties as shown by the covenant governs. Such intention is determined by a "fair interpretation of the grant or reserve creating the easement," and a servitude over one parcel of land for the benefit of another can be established only when that appears to have been the intention of the grantor.

In the determination of the intention of the parties, the entire context of the covenant is to be considered. In construing the words of the covenant, the court is not limited to dictionary

definitions, but the meaning of words used is governed by the intention of the parties, to be determined upon the same rules of evidence as other questions of intention. The words are to be taken in their ordinary and popular sense, unless they have acquired a peculiar or special meaning in the particular relation in which they appear or in respect of the particular subject matter, or unless it appears from the context that the parties intended to use them in a different sense.

20 Am. Jur. 2d *Covenants,* § 186 (1965).

In considering language similar to that in the case at bar, the supreme court stated, in *Collins v. Goetsch,* 59 Haw. 481, 583 P.2d 353 (1978), that a covenant restricting the use of a lot within a subdivision to a "single family dwelling" would ordinarily have "prohibited [appellants] from building more than one residential structure on the lot and *from using that structure to house more than one family." Id.* at 485, 583 P.2d at 357 (emphasis added). The supreme court reversed the trial court's granting of an injunction however, because an exception clause in the covenant rendered it ambiguous, thus invoking the general rule argued for by Appellants. The case at bar is distinguishable from *Collins,* in that the evidence here clarifies the meaning of the covenant.

We think the phrases in question here and in *Collins* are sufficiently similar so that *Collins* could legitimately be cited as authority for holding that the covenant in the instant case imposes the same limitation on use as expressed by the court in that case.

Even if that were not so, however, the question before the trial court here was the meaning of the language of the covenant, and the trial was conducted on the premise that the language was ambiguous. The parties and the trial court followed our directions and took extrinsic evidence to help ascertain the meaning of the phrase.[7] The evidence is clear and unrebutted and the rule argued for by Appellants is inapplicable.

Citing *Southampton Civic Club v. Couch,* 159 Tex. 464, 322

---

[7] Even without our direction in the first appeal, the taking of the extrinsic evidence to arrive at the intention of the original parties would have been warranted. Construction of covenants in deeds to property is not unlike construction of contracts. *Gosnay v. Big Sky Owners Ass'n,* 666 P.2d 1247 (Mont. 1983); *Timmerman v. Gabriel,* 155 Mont. 294, 470 P.2d 528 (1970).

S.W.2d 516 (1959), Appellants argue in the alternative that their rentals did not violate covenant no. 2. The court in *Southampton* held that the rental of a room is merely incidental to use as a single-family residence. *Id.* at 467, 322 S.W.2d at 518. However, that court also recognized that where,

> the evidence establishes as a matter of law, or if the trial court finds as a fact on conflicting evidence or as a reasonable inference from the evidence, that a particular defendant . . . is renting space to others in his dwelling house as a separate housekeeping unit . . . that activity should be enjoined.

*Id.* at 470, 322 S.W.2d at 520.

In the case at bar, the facts do not support the proposition that the rental was merely incidental. We are not dealing here with the rental of a room. This is a situation where Appellants have established two separate dwelling units. The undisputed facts show that Appellants each renovated their respective homes into two completely separate housekeeping units, each containing separate entrances, living areas, bathrooms, bedrooms, and partial kitchens (absent a stove)[8] and having no internal connection.

The nature of the renovated structures is such that they are capable of supporting two separate families living entirely independent of each other. That new character is clearly violative of the covenant and the fact that the added units may have been rented only to individuals does not mitigate the result.[9]

---

[8] This court is aware that it is common knowledge among those conversant with zoning law requirements and their enforcement that a property owner may avoid violating the zoning code by installing in a separate unit all kitchen appliances except for a stove, thus avoiding a ruling that a separate dwelling unit has been established. This does not prevent the tenant from thereafter using a hot plate or portable stove for cooking, thus establishing a complete kitchen and, therefore, a separate dwelling.

[9] Although the question is not presented in this case, we note that the developer's definition of "family," CZC § 21-1.10, includes the language ". . . provided further, that in lieu of the above family and d mestic servants, no more than five (5) unrelated persons may occupy a dwelling · r lodging unit . . ." Under that language, it would not appear to be a violation of ovenant no. 2 for a property owner in the Wiliwilinui Ridge subdivision to rent h or her home to unrelated persons numbering no more than five, provided the ho e has not been constructed or renovated to establish two or more separate housek bing units.

3.

Appellants argue that DeMunds are not entitled to attorney's fees. We agree.

An award of attorney's fees must be based on either statute, agreement, stipulation or precedent. *Smothers v. Renander,* 2 Haw. App. 400, 404, 633 P.2d 556, 560 (1981).

DeMunds contend the award is justified under HRS § 607-17,[10] because covenant no. 21 of the parties' deeds provides for such fees. Covenant no. 21 reads as follows:

> Whenever Seller shall employ an attorney to enforce any provision, term, condition or covenant contained herein to be performed or observed by the Buyer, Buyer shall pay a reasonable attorney's fee therefor.

The court below held that (1) covenant no. 21 authorized attorney's fees where an attorney is necessarily employed to seek its enforcement, citing *Uyemura v. Wick,* 57 Haw. 102, 551 P.2d 171

---

[10] HRS § 607-17 (1976) provides:

Attorney's fees when provided for in promissory notes, etc. Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

(1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;

(2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed; provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

Any law to the contrary notwithstanding, no such attorney's fee shall be allowed to the plaintiff by any court:

(1) If prior to or at the time the debt was incurred, the debtor did not sign an instrument in writing which provided for the payment of an attorney's fee; and

(2) If prior to or at the time the debt was incurred, the debtor did sign an instrument in writing which provided for the payment of an attorney's fee and such instrument in writing contains within its principal amount any attorney's fee from a prior debt.

At oral argument DeMunds also asserted that attorney's fees are allowed to them under HRS § 607-14, which provides for such fees in actions in the nature of assumpsit. However, this action is not in the nature of assumpsit, but is simply for an injunction. *See Smothers v. Renander, supra.*

(1976); (2) DeMunds had a legal right to enforce the covenant, citing *DeMund v. Lum,* 1 Haw. App. 443, 620 P.2d 270 (1980); and (3) although not calculable under HRS § 607-17, a reasonable fee is allowable, citing *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978). In this appeal, DeMunds rely on *Food Pantry.* We hold that the lower court erred.

*Uyemura* and *Food Pantry* are factually distinguishable from the instant case. In *Uyemura* plaintiff joined a third-party defendant to whom was sold and conveyed the same real property which had also been contracted for sale to plaintiff. The third-party defendant was awarded fees recoverable from defendants, because defendants' wrongful acts led to the joinder of the third party who necessarily incurred expenses to defend himself. In *Food Pantry,* the action was between the parties to the lease, which contained a provision for attorney's fees.

In the instant case, covenant no. 21 provides for attorney's fees in the event the seller employs an attorney to enforce the deed covenants. Although in the first appeal we held that DeMunds had the right to seek relief from violation of the covenants, the matter of recovery of attorney's fees was not discussed.

The language in covenant no. 21 is clear and unambiguous. It gives the seller the right to recover attorney's fees upon its enforcement of the deed covenants. There is nothing in the record to indicate that the developer meant the word "seller" to include any other owner in the subdivision. Additionally, there is nothing in our holding on the first appeal to indicate that while DeMunds were entitled to enforce the covenants, they also had the right to attorney's fees for that enforcement.

## APPEAL FROM NOVEMBER 23, 1983 ORDER

Johnsons raise two issues in their appeal from the November 23, 1983 order. These issues and our answers are:

(1) Whether the trial court erred in finding that Johnsons had violated the April 8, 1983 judgment? No.

(2) Whether the trial court erred in awarding attorney's fees?[11] Yes.

---

[11] *See* footnote 2, *supra.*

1.

The basis for Johnsons' argument is that the injunction was originally issued in error. In view of our holding on the April 8, 1983 judgment, we find no merit to this argument.

Even assuming, arguendo, that the April judgment was in error, Johnsons still had the duty to comply with the trial court's injunction "until its decision [was] reversed for error by orderly review, either by itself or by a higher court." *Hawaii Public Employment Relations Board v. Hawaii State Teachers Association,* 55 Haw. 386, 391, 520 P.2d 422, 426 (1974) (quoting *Howat v. Kansas,* 258 U.S. 181, 189-90 (1922)).

2.

Johnsons argue that the court erred in awarding attorney's fees in the November 23, 1983 order. We agree.

Some authorities hold that attorney's fees may be awarded to the prevailing party in both civil and criminal contempt proceedings, but others have held that fees may not be awarded absent statutory authorization. 17 Am. Jur. 2d *Contempt* § 114 (1964). We are in accord with the latter view.

We are not persuaded by DeMunds' argument that a court in equity may mold its decree in accordance with the violation of the court's injunction to include attorney's fees. "Attorney's fees are not recoverable in equitable actions absent an agreement or statute." *Loui v. Corey,* 2 Haw. App. 556, 558, 634 P.2d 1055, 1057 (1981). Nor, as stated above, are DeMunds entitled to attorney's fees by virtue of the holding in the first appeal herein.

CONCLUSION

We reverse the trial court's award of attorney's fees in the April 8, 1983 judgment and the November 23, 1983 order. In all other matters, we affirm.

*James M. Sattler (Dennis M. Klein* with him on the briefs) for defendants-appellants.

*Jack C. Morse (Morse, Nelson & Ross* of counsel) for plaintiffs-appellees.