**AMERICAN EMPIRE LIFE INSURANCE COMPANY et al., Appellants,**

v.

**Ora M. LONG, Appellee.**

**No. 3599.**

Court of Civil Appeals of Texas.

Eastland.

Feb. 24, 1961.

Rehearing Denied March 17, 1961.

Rountree, Renner & Snell, Lamesa, F. L. Kuykendall, Austin, for appellants.

Vernon D. Adcock, Karl Cayton, Lamesa, for appellee.

WALTER, Justice.

Ora M. Long filed suit against American Empire Life Insurance Company, hereinafter referred to as American Empire, and National Trust and Security Company, hereinafter referred to as National Trust, alleging fraud · and seeking a judgment declaring void a subscription for 1229 shares of American Empire stock and for a recovery of the purchase price. Each of the defendants filed a plea of privilege and, subject to the plea, a general denial. In a non-jury trial, the court heard the pleas of privilege and the case on its merits together and overruled the pleas of privilege and rendered judgment for the plaintiff. We affirm the judgment.

The insurance companies have appealed, contending the court erred in hearing and overruling their pleas of privilege. They contend there was no evidence that the salesman, Starer, was their agent, and the court erred in the admission of evidence. By their final point, they contend, that even though the salesman Starer was their agent at the time he made the representations and the sale of the stock, Mrs. Long failed to establish that the insurance companies did not intend to perform their obligation in the future.

American Empire and National Trust filed only a general denial. They pleaded no affirmative defenses and filed no exceptions to Mrs. Long's pleadings. They did not by motion, exception, or otherwise point out to the trial court any defect, omission, or fault in the pleadings, either of form or substance; therefore, they cannot for the first time on appeal object to the pleadings for these reasons. We find the pleadings are sufficient to allege a cause of action. Rule 90, Rules of Civil Procedure; Texas Osage Co-op Royalty Pool et al. v. Kemper et ux., Tex.Civ.App., 170 S.W.2d 849 (Writ Ref.); Gadd et al. v. Lynch et al., Tex.Civ.App., 258 S.W.2d 168 (Writ Ref.).

If there is any evidence of probative value in the record to support the findings of the trial court, we must affirm the judgment. The trial court could consider all the facts and circumstances in evidence and indulge reasonable inferences therefrom in making such findings. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286.

Mr. Long was living at the time the stock was purchased, but died prior to the filing of this suit. Mrs. Long testified in

substance: that in response to an advertisement in the Fort Worth Star-Telegram, dated February 27, 1955, she wrote a letter to American Empire seeking more information. The material portions of the advertisement are as follows:

"Invest With Safety And Make Big Profits Offered to Bona Fide Residents of Texas by Prospectus Only Common Capital Stock in the American Empire Life Insurance Co., Austin, Texas Old Legal Line Reserve Over 114 Licensed Agents Use Our Easy Payment Plan $12.20 Per Share *Your Original Purchase Price Available On Demand*". (Emphasis ours.)

She also testified: that American Empire answered her letter on March 8, 1955, with salesman Starer's name typed at the end thereof; that in Starer's letter to the Longs he thanked them for replying to the advertisement and apologized for the delay in forwarding the requested information; he informed them the advertisement had a large response and the company ran short on material; that in response to her letter answering the advertisement, the company sent their representative Starer to Lamesa to give the Longs more information about the stock; that Starer represented to them that buying the stock was like putting money in the bank because they could get it on demand and still have a chance to make some money; that Starer represented to them that American Empire was backed up by another big company, National Trust; that Starer displayed to the Longs the advertisement in the Fort Worth Star-Telegram which they had answered and represented to them that the company couldn't publish an advertisement like that unless it were true; that Starer told them that the stock was worth $13.50 per share and that he was letting them have it for $12.20 and that it would be safe like a bank; that while Starer was discussing with them the repurchase agreement, he informed them there was no time limit when the Longs' demand for a refund would have to be made; that acting upon the representations

made to them by Starer, the Longs subscribed for 1,229 shares of stock and delivered to Mr. Starer $14,993.80. On March 22, 1955, National Trust wrote the Longs a letter enclosing their stock certificate for 1,229 shares of stock.

The evidence reveals that said purchase money was deposited to the credit of National Trust in the Capitol National Bank in Austin, Texas, on March 21, 1955. American Empire admits that the salesman Starer delivered Long's stock subscription to its office, and that it received $14,993.80 from Claude Long. The Longs received their stock in a letter of transmittal on National Trust stationery signed by the president of National Trust and delivered in an envelope of American Empire. The main office and principal place of business of National Trust and American Empire were maintained at the same address. After the Longs purchased the stock, they received numerous letters informing them of the company's progress and on May 4, 1955, the postscript to one of the letters read as follows: "The price of $12.20 is guaranteed by National Trust."

The secretary of American Empire testified that after the company discontinued selling stock, they began receiving inquiries about the repurchase agreement and she then realized the salesmen had been using the repurchase agreement to further their sales. National Trust admits that during the period from the date of its charter, up to, and including the last of May, 1955, the principal activity of National Trust and its employees was that of influencing the sale of American Empire stock.

The following letter was received by the Longs after they purchased their stock:

"To The Original Purchasers Of Stock Of The American Empire Life Insurance Company:

"A ready sale awaits you for all of your stock at the purchase price originally paid. This will inform you that pursuant to an agreement dated October

8, 1954, between the National Trust & Security Company and the American Empire Life Insurance Company, we the National Trust & Security Company have obligated ourselves to purchase from the original purchaser any of the stock of the American Empire Life Insurance Company for the same cash consideration that the purchaser paid for the stock when it was originally issued by the Company.

"For further details of this underwriting agreement you may contact us directly, or inquire of any of our authorized agents."

A limitation was placed on the obligation of National Trust to repurchase the American Empire stock in its written agreement with American Empire. The Longs were never informed about this limitation, but the company's representative Starer had assured them there was no time limit on the repurchase agreement.

American Empire admits request for admissions number 60, "That after said repurchase agreement option had expired, the defendant had its agent to call upon Claude W. Long and his wife on or about the 11th day of February, 1957, for the purpose of securing his execution of the following form:

" 'Claude W. Long 535 shares To Mr. F. D. Glass, Jr., and other stockholders of American Empire Life Insurance Company: Please send me my stock bonus so as to reduce the purchase price of my stock to a total cost of $8.50 a share, at no additional monetary cost to me.

" 'It is understood that I will be entitled to receive dividends on this bonus stock as well as my present holdings and that *I hereby release, in consideration for this stock bonus, any rights that I might have under the repurchase agreement of October 8, 1954.* If I am purchasing my stock under the time purchase plan, please place my bonus stock in my file, it being understood however that I will receive dividends on such stock. Dated: _____ 1956.

" '_____

Stockholder.' "

(Emphasis ours.)

At this time the insurance companies were not denying that Starer had acted as their agent and made such representations to the Longs about the repurchase agreement and the price of the stock, on the other hand, they seemed to be ratifying his acts and representations and attempting to purchase their release from said "repurchase agreement" with more stock. The admission by the company that they sent their agent to secure the Longs' release of the company's obligation under its repurchase agreement is a circumstance tending to show that they construed the representations made by their agent, Starer, as binding on them. If Starer's representations were not binding on the company, what useful purpose would be served by securing said release? The Longs refused to execute said release and made a demand at such time for a refund of their original purchase price and the company's agent refused to repurchase the stock. Soon thereafter Mrs. Long's husband passed away. Mrs. Long and her attorney went to Austin and contacted the two insurance companies and again tendered the stock to them and called upon them to repurchase same and they refused.

One of the witnesses testified the value of the stock was $1.50 per share. The company's admissions to request number 60 copied above indicates the value of the stock was less than Starer represented it to be.

■ The insurance companies' point that the court erred in hearing this case on its merits without first hearing and rendering judgment on the pleas of privilege cannot be sustained. It appears from the record that the insurance companies agreed for the court to hear the case on its merits at

the same time he heard the case on the pleas of privilege. When the court asked counsel if they were ready for trial the insurance companies' attorney answered: "I want the record to show that the case is being tried subject to the Plea of Privilege, and that even if the Court should hold against the defendants on the Plea of Privilege, and on the merits, that we do not waive our right to insist upon our appeal from the Court's ruling on the Plea of Privilege." Rule 385, R.C.P., provides that where the appeal is from an order sustaining the plea of privilege, transfer of the venue and trial upon the merits shall be suspended pending the appeal. In the case at bar the court overruled the pleas of privilege. We find no rule prohibiting the court from hearing, by agreement, a case on its merits and the plea of privilege at the same time. See Sneed v. Box, Tex.Civ.App., 166 S.W. 2d 951.

We hold that Mrs. Long has established venue in Dawson County under Subdivisions 7, 9 and 23 of Article 1995, Vernon's Ann.Texas Civ.St., and all of appellants' points complaining about the errors of the court in overruling their pleas of privilege are overruled.

■ The court did not err in admitting a photostatic copy of a page of the Fort Worth Star-Telegram showing the company's advertisement of the stock because the evidence established that the original had been lost or destroyed and that no original copy was available at the time of trial which was about three years after the paper was published. The court heard testimony that the original had been lost and that diligence had been used to obtain the original. Article 3731c, V.A.T.C.S. Also there is evidence in this record without objection that Starer had a copy of the advertisement with him and displayed it to the Longs and used it in his sales talk before he took their subscription for the stock.

■ American Empire and National Trust contend the evidence creates only a very slight suspicion or surmise that Starer had any connection with their companies. The secretary of National Trust testified: that their salesmen were permitted to purchase stock and pay for it out of their commission; that many of their salesmen did send in their purchase orders with their thirty-day note attached thereto; that Starer sent them his purchase order for stock with his note attached. In reply to the following request: " * * * That at the time Lon Starer obtained from Claude W. Long in Lamesa, Dawson County, Texas, his execution of said Subscription Contract Form No. 11893, said Claude W. Long delivered to said Lon Starer in Lamesa, Dawson County, Texas, in exchange for said subscription contract certified drafts of the value of $14,999.00, but an error was made in the preparation of one of such drafts and the defendant exchanged it soon thereafter for a personal check from said Claude W. Long for the amount of $993.80 which was received and cashed by defendant.", American Empire replied: " * * * In regard to Paragraph 47, this Defendant cannot admit what transpired between Lon Starer and Claude W. Long, but it has no reason to deny that the facts contained in Paragraph No. 47 are not true and it admits the exchange of one draft for the amount of $993.80, but it does not admit that American Empire Life Insurance Company received any of said money on behalf of itself from Claude W. Long." Appellants have received and are retaining all the fruits of Starer's fraud and under such circumstances cannot deny that Starer was their agent. Delaware Punch Company of America v. Reinarz, Tex.Civ.App., 61 S.W.2d 135. We find from all the facts and circumstances in evidence that a fact question of agency and actionable fraud was raised and the court was warranted in finding that Starer was a duly authorized agent for American Empire and National Trust.

We find no error, such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment, in

**518**

the appellants' points complaining about the admission of evidence. These points are overruled. Rule 434, R.C.P.

■ "We recognize the fact that 'in order for a promise to constitute fraud it is necessary that it should have been made with the intent at the time that it would not be performed, and with the intention, design and purpose of deceiving. In other words, a promise made with a preconceived intention not to perform may amount to actionable fraud if the misrepresentation is material and is relied upon by the other party to his injury. This intention not to perform may be evidenced by circumstances. * * *' 20 Tex.Jur. Sec. 16, pp. 33, 34; 37 C.J.S. Fraud § 12, p. 237; Manziel v. Williams, Tex.Civ.App., 262 S.W.2d 437, and authorities there cited. See also Henderson v. San Antonio & M. G. Railroad Co., 17 Tex. 560, and Cearly [Cearley] v. May, 106 Tex. 442, 167 S.W. 725." Shaw v. Tyler Bank & Trust Company, Tex.Civ. App., 285 S.W.2d 782, 788.

■ Whether the companies had a preconceived intention not to perform under the repurchase agreement and acted with the intention, design and purpose of deceiving were fact questions. We find from all the facts and circumstances in evidence that the court was warranted in finding that Mrs. Long has established a case of actionable fraud. "Fraudulent representations may consist of half-truths calculated to deceive * * *." Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803, 805.

After the Longs discovered that the representations contained in said advertisement and the representations of Starer that their original purchase price would be paid upon demand were not true and that the representations about the value of the stock were not true, they made several demands on the companies to repurchase their stock. All of these demands were refused.

We have examined all of appellants' points and find no merit in them and they are overruled.

Judgment affirmed.