In the Interest of JANE DOE, born on June 4, 1987,
Juvenile-Appellant

NO. 13507

(FC-S NO. 87-00444)

DECEMBER 18, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

The court-appointed Guardian Ad Litem (GAL) for Jane Doe (Doe), born on June 4, 1987, appeals the family court's October 20, 1988 Order Allowing the Department of Human Services to Remove Minor from Foster Home (October 20, 1988 Order) and November 9, 1988 Order Denying Motion For Reconsideration (November 9, 1988 Order). We affirm.

*Issues and Answers*

The issues and our answers are as follows:

I. Does Hawaii's Child Protective Act, Hawaii Revised Statutes (HRS) Chapter 587 (1985 and Supp. 1988), conflict with HRS § 571-46 (1985) on the priorities applicable when awarding temporary foster custody, foster custody and permanent foster custody of a child? Our answer is no.

II. When the Department of Human Services of the State of Hawaii (DHS) is the family court-appointed foster custodian of a minor child, does DHS need family court approval before removing the child from the child's Hawaii foster caretakers and placing the child with other Hawaii foster caretakers? Our answer is no.

III. When DHS is the family court-appointed foster custodian of a minor child, is DHS's decision that it serves the best interests of the child to remove the child from the child's Hawaii foster caretakers and place the child with other Hawaii foster caretakers a matter of law, a finding of fact or an exercise of discretion? We conclude that it is an ultimate finding of fact.

IV. When DHS is the family court-appointed foster custodian of a minor child, may DHS remove the child from the child's foster caretakers without first finding that the foster caretakers are not fit

and proper persons or that their home is not stable and whole-some? Our answer is yes.

V. When DHS is the family court-appointed foster custodian of a minor child, may DHS remove the child from the child's foster caretakers solely on the basis of its ultimate finding of fact, supported by its preliminary findings of fact and substantial evidence, that such removal is in the child's best interests? Our answer is yes.

VI. When the family court decided that DHS's ultimate finding of fact (that such removal was in the child's best interests) was not clearly erroneous, was its decision right or wrong? Upon a review of the record, we conclude that it was right.

*Facts*

On June 5, 1987 the Honolulu Police Department took Doe into protective custody. On June 9, 1987 DHS petitioned the family court pursuant to HRS § 571-11(9) (1985) and Chapter 587 for court orders serving Doe's best interests, including the immediate temporary termination of parental physical custody, an award of foster custody to DHS, and possible permanent termination of parental rights leading to an adoption. On June 12, 1987 the family court appointed GAL and granted DHS's request for a prehearing award of temporary foster custody. On June 26, 1987 DHS placed Doe in Foster Caretakers' temporary foster care.

On September 14, 1987 the family court entered an Order Establishing Jurisdiction and Awarding Foster Custody which states, in relevant part, as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the above-named child comes under the exclusive jurisdiction of the Family Court pursuant to HRS § 571-11(9) and § 571-11, as amended;

2. That foster custody over the child is awarded to the Department of Human Services[.]

On December 4, 1987 the family court, noting that Doe's natural parents "agreed to permanent custody to DHS with subsequent adoption", orally awarded Doe's "permanent custody" to DHS, and set a Permanent Plan review hearing for May 23, 1988.

On May 18, 1988 Foster Caretakers filed a motion to intervene which the family court subsequently granted.

At the Permanent Plan review hearing on August 30, 1988 DHS noted its doubt about the appropriateness of Foster Caretakers' reaction to certain events which occurred in their home prior to Doe's placement with them. DHS did not allege that Foster Caretakers were unfit and improper persons or that their home was unstable and unwholesome. DHS stated in writing as follows:

> In the instant case [Foster Caretakers] desired to adopt [Doe]. The testimony has shown that the social workers involved did give their request serious consideration.
>
>      \*     \*     \*
>
> The DHS is not saying that [Foster Caretakers] were neglectful but rather that in terms of looking at life-time placement for [Doe] a better home has been found. \* \* \* [T]he DHS does not believe that this is the best possible home for [Doe] and cannot consent to the adoption.
>
>      \*     \*     \*
>
> [T]he decision of the best adoptive family for [Doe] came out in favor of the identified adoptive home with her two brothers.
>
> The DHS has identified an adoptive home for [Doe] and this family in addition to having none of the problems or potential for problems that [Foster Caretakers'] family has, is going to be adopting [Doe's] two natural brothers. The DHS is committed to placing children with families whenever possible. That policy is in harmony with the Child Protective Act. When not possible to place with the natural parents, the DHS then tries to place children with their siblings or relatives.
>
>      \*     \*     \*
>
> The DHS agrees with the Guardian Ad Litem . . . that [Foster Caretakers] have provided [Doe] with a stable and caring environment, but the DHS is now looking for a home that can provide for the child's long-term psychological and emotional needs, in addition to meeting her basic needs. The DHS is grateful to the [Foster Caretakers'] family and does not wish to jeopardize its relationship with them, but its first priority must

always be with the child and what is in her best interests. The DHS recognizes that there may develop close emotional ties between foster parents and the child and that may hinder the child's adjustment in a permanent home, but that does not mean that the child should remain in the home if a better placement has been found.

\* \* \*

In summary, the DHS has been granted the authority to find the best possible home for [Doe] and is committed to doing just that. The DHS stands firm in its position that [Foster Caretakers'] family is not the best adoptive home for this child and that the child should be placed with the approved adoptive home without further delay. \* \* \* The DHS respectfully requests that this Honorable Court allow it to place [Doe] in the approved adoptive home with her two brothers.

Thereafter, the family court entered its October 20, 1988 Order authorizing DHS to transfer Doe from Foster Caretakers to the proposed adoptive family and its November 9, 1988 Order denying Foster Caretakers' September 19, 1988 Motion for Reconsideration.

On November 28, 1988 the family court entered an Order Awarding Permanent Custody and Establishing a Permanent Plan in which it, *inter alia,* terminated Doe's mother's parental rights (but not all of her parental obligations) and appointed the Director of DHS as Doe's permanent custodian, subject to the child's father's rights. Later the same day, the family court approved and ordered a Stipulation Awarding Permanent Custody and Establishing a Permanent Plan which, *inter alia,* terminated Doe's father's parental rights (but not all of his parental obligations). GAL then filed a timely notice appealing the October 20, 1988 Order and the November 9, 1988 Order.

The family court's January 6, 1989 Findings of Fact read, in relevant part, as follows:

1. [Doe] is the natural child of . . . (mother) and . . . (father). [Doe] was born on June 4, 1987.

2. [Doe's] half brother . . . died on August 6, 1986 allegedly due to physical abuse and neglect[.] [Doe's] two (2) natural brothers and half-sister were removed from the [Natural Par-

ents'] home on August 6, 1986, and placed under police protective custody.

\* \* \*

4. On June 5, 1987, [Doe] was taken into police protective custody as she was assessed to be in imminent risk of harm because her parents['] . . . home, was deemed to be unsafe.

5. That on June 26, 1987, [Doe] was placed in the home of [Foster Caretakers]. They had been speciallly [sic] licensed as foster parents, specifically for [Doe] at the request of [Natural Parents].

\* \* \*

7. The [F]oster [Caretakers] . . . later wanted to be considered as a possible adoptive home for [Doe]. . . . The Department began investigating the [Foster Caretakers'] family for adoption purposes.

8. The Department was also considering placement of [Doe] with her two brothers in their adoptive home as part of the DHS policy to place siblings together whenever possible. That home had already been approved by the DHS as an adoptive home placement for [Doe's] two brothers.

9. After thorough consideration the DHS decided that it was in [Doe's] best interests to be placed with her two brothers with eventual adoption of all three children by that family.

10. The . . . [Foster Caretakers'] home has provided good care to [Doe].

\* \* \*

12. The Court's sole consideration must be what is in [Doe's] best interests, and the Court finds that it is in her best interests to be transferred to the proposed adoptive home and be united with her two brothers.

The birth dates of Doe's siblings referred to in the findings of fact are as follows:

| Relationship | Birth Date |
| --- | --- |
| Half-sister | August 26, 1980 |
| Half-brother, deceased | August 12, 1981 |
| Brother | June 28, 1984 |
| Brother | July 20, 1985 |

*Applicable Statutes*

In support of her appeal, GAL cites HRS § 571-46(1), (2), (5), and (6) which provide as follows:

Criteria and procedure in awarding custody. In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court may, during the pendency of the action, at the final hearing or any time during the minority of the child, make such order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court is to be guided by the following standards, considerations, and procedures:

(1) Custody should be awarded to either parent or to both parents according to the best interests of the child.

(2) Custody may be awarded to persons other than the father or mother whenever such award serves the best interest of the child. Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall prima facie be entitled to an award of custody.

\* \* \*

(5) The court may hear the testimony of any person or expert produced by any party or upon the court's own motion, whose skill, insight, knowledge, or experience is such that the person's or expert's testimony is relevant to a just and reasonable determination of what is to the best physical, mental, moral, and spiritual well-being of the child whose custody is at issue.

(6) Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change[.]

In response, DHS cites portions of HRS § 587-1 and -2 (Supp. 1988). HRS § 587-1 provides in relevant part as follows:

Purpose; construction. This chapter creates within the jurisdiction of the family court a child protective act in order to safeguard, treat, and provide permanent planning for children

who have been harmed or threatened with harm.

\* \* \*

The policy and purpose of this chapter is to provide children with prompt and ample protection from the harms detailed herein, with an opportunity for timely reconciliation with their families where practicable, and with timely and permanent planning so they may develop and mature into responsible, self-sufficient, law-abiding citizens. This permanent planning should effectuate placement with a child's own family when possible and should be conducted in an.expeditious fashion so that where return to the child's family is not possible as provided in this chapter, such children will be promptly and permanently placed with responsible, competent, substitute parents and families, and their place in such families secured by adoption or permanent custody orders.

This chapter shall be liberally construed to serve the best interests of the children and the purposes set out in this chapter.

"Family", "family home", "foster care", "temporary foster custody", "foster custody", and "permanent custody" are defined in HRS § 587-2 (Supp. 1988) as follows:

"Family" means each legal parent, the natural mother, the natural father, the adjudicated, presumed, or concerned natural father as defined under section 578-2, each parent's spouse, or former spouses, each sibling or person related by consanguinity or marriage, each person residing in the same dwelling unit, and any other person who or legal entity which is a child's legal or physical custodian or guardian, or who is otherwise responsible for the child's care, other than an authorized agency which assumes such a legal status or relationship with the child under this chapter.

"Family home" means the home of the child's legal custodian where there is the provision of care for the child's physical and psychological health and welfare.

"Foster care" means a residence designated as suitable by an authorized agency or the court for the appropriate care of a child upon orders of disposition or permanent custody.

"Temporary foster custody" means a legal status created under this chapter with or without order of the court whereby the department assumes the duties and rights of a foster custodian over a child.

"Foster custody" means the legal status created pursuant to this section, section 587-21(b)(2), or by an order of court after the court has determined that the child's family is not presently willing and able to provide the child with a safe family home.

 (1) Foster custody vests in a foster custodian the following duties and rights:

  (A) To determine where and with whom the child shall be placed in emergency foster care or foster care; provided that the child shall not be placed in emergency foster care or foster care outside the State without prior approval of the court; provided further that, subsequent to the temporary foster custody hearing, unless otherwise ordered by the court, the temporary foster custodian or the foster custodian may permit the child to resume residence with the family from which the child was removed after providing prior written notice to the court and to all parties, which notice shall state that there is no objection of any party to such a return; and upon the return of the child to the family, temporary foster custody, or foster custody automatically shall be revoked and the child and the child's family members who are parties shall be under the temporary family supervision or the family supervision of the former temporary foster custodian or foster custodian[.]

"Permanent custody" means the legal status created by order of the court after the court has considered the criteria set forth in section 587-73(a) or (e) and determined by clear and convincing evidence that it is in the best interests of the child to order an appropriate permanent plan concerning the child.

 (1) Permanent custody divests from each legal custodian and family member who has been summoned pursuant to section 587-32(a), and vests in a permanent custodian, each of the parental and custodial duties and rights of a

legal custodian and family member, including, but not limited to, the following:

(A) To determine where and with whom the child shall live; provided that the child shall not be placed outside the State without prior approval of the court[.]

*Discussion of Issues I, II, IV, and V*

GAL argues that absent a finding that Foster Caretakers are not fit and proper persons or that their home is not stable and wholesome, HRS § 571-46(2) required DHS and the family court to award Doe's custody to Foster Caretakers. In our view, GAL misinterprets HRS § 571-46(2) and ignores the words "prima facie". Moreover, her interpretation conflicts with the plain language of HRS § 587-2.

Under HRS § 571-46, the determining factor with respect to child custody is the best interests of the child. *Fujikane v. Fujikane.* 61 Haw. 352, 604 P.2d 43 (1979). On the subject of best interests, HRS § 571-46(1) accords priority to the child's parents. HRS Chapter 587 accords priority to the child's family as defined in HRS § 587-2, *supra.* There are no other statutory priorities. Thus, when HRS § 571-46(2) authorizes the award of custody to "[a]ny person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person" it does so only "whenever such award serves the best interest of the child", subject to the statutory priority in favor of the child's parents and family.

Foster Caretakers are neither parents nor family. Doe was initially in DHS's temporary foster custody and foster custody. During that time, HRS § 587-2 authorized DHS "[t]o determine where and with whom the child shall be placed in emergency foster care or foster care[.]" Later, when Doe was in DHS's permanent custody, HRS § 587-2 authorized DHS "[t]o determine where and with whom the child shall live[.]" Therefore, DHS did not need the family court's approval prior to implementing its decision to move Doe.

*Discussion of Issues III and VI*

In well-developed areas of the law, findings of specified mate-

rial elements or criteria mandate one conclusion of law. In these areas, the matters or questions of fact are decided by the fact finder and the conclusion of law is decided by the court. On appeal, the findings of fact are reviewed under the clearly erroneous standard of review and the conclusion of law is reviewed under the de novo or right/wrong standard of review. *DeMund v. Lum,* 5 Haw. App. 336, 690 P.2d 1316 (1984).

In less-developed areas of the law, the facts permit more than one conclusion in the discretion of the court. In these areas, the matters or questions of fact are decided by either the fact finder or the court and the conclusion is decided by the court. If findings of fact are entered, they are reviewed under the clearly erroneous standard of review. The conclusion is reviewed under the abuse of discretion standard of review. *Heston v. Heston,* 49 Haw. 521, 423 P.2d 437 (1967).

Child custody is an area where the law has not determined the specific material elements or criteria that mandate a conclusion as to what custodial arrangements are in the best interests of the child. HRS § 571-46(5) (1985) infers that best interests mean "the best physical, mental, moral, and spiritual well-being of the child[.]" The definition of "family home" in HRS § 587-2 suggests that best interests mean "the provision of care for the child's physical and psychological health and welfare." When the child's family is unwilling or unable to provide the child with a safe family home, HRS § 587-73(a)(3)(A) (Supp. 1988) indicates that best interests means "to be promptly and permanently placed with responsible and competent parents and families in safe and secure homes[.]"

Some considerations are universally accepted as being relevant. There is, however, no agreement as to the relative priority of each of these considerations. Consequently, currently in Hawaii, *Fujikane v. Fujikane, supra; Sabol v. Sabol,* 2 Haw. App. 24, 624 P.2d 1378 (1981), and in most other states, *see* 63 N.D.L. Rev. 481, 530 n.199 (1987), the decision as to what custodial arrangements are in the best interests of a specific child is a matter for the court's discretion. In practice, each trial judge identifies, prioritizes, and applies the considerations he or she deems relevant. Under this system, the range of permissible choices available to the trial court is virtually unlimited.

If we want to initiate the case law process of identifying,

prioritizing, and standardizing the relevant considerations and their application, we must characterize the best interests decision either as a question of ultimate fact or a conclusion of law. Since we have not yet developed specific material elements or criteria, we cannot characterize it as a conclusion of law. Thus, the only alternative is to characterize it as a question of ultimate fact. That is what the courts did in *In Re Maria C.*, 527 A.2d 318 (Me. 1987), and *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D. 1972).

In light of the above considerations, we conclude that the decision as to what custodial arrangements are in the best interests of the child is a matter or question of ultimate fact reviewable under the clearly erroneous standard of review.

Our decision is consistent with HRS § 587-41 (Supp. 1988). It provides, in relevant part, as follows:

> Evidentiary determination; burden of proof.
>
> \* \* \*
>
> (b) In an adjudicatory hearing, a determination that the child has been harmed or is subject to threatened harm shall be based on a preponderance of the evidence[.]
>
> (c) In subsequent hearings, other than a permanent plan hearing, any determination shall be based on a preponderance of the evidence[.]
>
> (d) In a permanent plan hearing:
>
> (1) A determination that permanent custody of a child be awarded to an appropriate authorized agency shall be based upon clear and convincing evidence; and
>
> (2) A determination that a child should be the subject of an adoption shall be based upon a preponderance of the evidence.

Since matters of law and discretion do not involve such degrees of proof, HRS § 587-41's requirement of the preponderance and clear and convincing degrees of proof corresponds with our decision that DHS's decision that it was in Doe's best interests to remove her from Foster Caretakers' home and transfer her to the proposed adoptive home was an ultimate finding of fact.

In essence, GAL appealed DHS's adverse foster care placement decision to the family court, contending that DHS's ultimate finding of fact was clearly erroneous. Since the family court made the

same finding, it obviously concluded that DHS's finding was not clearly erroneous. Whether a finding of fact is clearly erroneous is a question of law. Consequently, the dispositive issue is whether the family court was right or wrong in concluding that DHS's ultimate finding was not clearly erroneous. Upon a review of the record, we conclude that the family court's conclusion was right.

### Conclusion

Accordingly, we affirm the family court's October 20, 1988 Order Allowing the Department of Human Services to Remove Minor from Foster Home and its November 9, 1988 Order Denying Motion for Reconsideration.

*Laurie Arial Tochiki,* Guardian Ad Litem for appellant Jane Doe, on the brief.

*Kenneth E. Enright* and *Jay K. Goss,* Deputy Attorneys General, on the brief for appellee Department of Human Services.