<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000407
17-JUL-2025
07:46 AM
Dkt. 179 MO**</span>

NO. CAAP-22-0000407

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


LISE AND JOHN BOHM KAUAI GREEN HOUSE LLC,
a Hawaii limited liability company,
Plaintiff/Counterclaim Defendant-Appellee/Cross-Appellant,
v.
OCEANAIRE PROPERTIES, LLC, a Nevada limited liability company,
Defendant/Counterclaimant-Appellant/Cross-Appellee,
JOHN DOES 1-50; DOE PARTNERSHIPS 1-50, CORPORATIONS 1-50, DOE
ENTITIES 1-50, and DOE GOVERNMENTAL UNITS 1-50,
Defendants/Counterclaim Defendants,
MARY DOES 1-50, Defendants,
and
DOE TRUSTS 1-10 AND JANE DOES 1-10, Counterclaim Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CCV-19-0000001)

**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, McCullen and Guidry, JJ.)

Defendant/Counterclaimant-Appellant/Cross-Appellee

Oceanaire Properties, LLC (**Oceanaire**) appeals, inter alia, from

the May 24, 2022 Final Judgment,[1] and the May 24, 2022

---

[1] The Circuit Court of the Fifth Circuit (**circuit court**) entered an Amended Final Judgment on May 2, 2023, in compliance with this court's April 19, 2023 Order for Temporary Remand for entry of a final judgment that complied with Hawai'i Rules of Civil Procedure (**HRCP**) Rule 58, and Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 869 P.2d 1334 (1994).

"Plaintiff's Findings of Fact [(**FOFs**)] and Conclusions of Law [(**COLs**)] and Order" (**Order**),[2] entered by the circuit court.[3] Plaintiff/Counterclaim Defendant-Appellee/Cross-Appellant Lise and John Bohm Kauai Green House LLC (**Bohm**) cross-appeals from the Final Judgment and Order.

The parties raise several points of error on appeal. Oceanaire contends that the circuit court erred by: (1) concluding that Easement B on the 1989 Subdivision Map was "[c]ancelled, [a]bandoned[,] or [o]therwise [t]erminated"; (2) failing to join necessary parties pursuant to HRCP Rule 19; (3) granting Bohm's April 27, 2021 motion for partial summary judgment and "[g]ranting [m]andatory [i]njunctive [r]elief [o]rdering Oceanaire to [i]mplement a [s]pecific [d]esign for [r]econfiguring the [a]ccess to Kuleana Lots 1 through 5 and Lot 10, [i]ncluding [u]se of [s]o-[c]alled 'Easement D'"; (4) entering certain FOFs and COLs; (5) concluding that Bohm was the prevailing party; and (6) awarding attorneys' fees to Bohm.

Bohm contends, on cross-appeal, that the circuit court erroneously denied Bohm damages. Bohm contends that it should be compensated for Oceanaire's unpermitted use of the road that

_____

[2]    In addition to the Final Judgment and Order, Oceanaire appealed from various orders entered by the circuit court, some of which have been incorporated into the Amended Final Judgment.

[3]    The Honorable Randal G.B. Valenciano presided.

crosses its property (**Illegal Access**), and that it is entitled to punitive damages because the Illegal Access amounted to "an intentional, knowing, and continuous trespass over three and a half years with the wanton disregard for Bohm's property and privacy rights."

## I.    Background

This case involves a dispute over an access easement on the Hanalei Garden Farms Estates (**HGFE**) Subdivision (**Subdivision or HGFE subdivision**) in Princeville, Kauai. The Subdivision consists of Kuleana Lots 1 through 5, and Lots 1 through 14. Oceanaire is the current owner of Kuleana Lot 5; Bohm is the current owner of Lot 7.

Kuleana Lot 5 is part of the Subdivision's Kuleana Lots, which were created pursuant to a 1989 "consolidation and re-subdivision" as reflected on the 1989 Subdivision Map and the Affidavit by William F. Mowry (**Affidavit**). Kuleana Lot 5 was first conveyed by the developer in 2005. Oceanaire purchased Kuleana Lot 5 in 2019 from Haumea Properties, LLC (**Haumea**). The property descriptions attached to the Affidavit provide that each Kuleana Lot is accompanied by Easements A, B, and C for "access and utility purposes."

Lot 7 was created as part of a second subdivision, the 2002 Subdivision. The 2002 Subdivision created Lots 1 through 14, along with various easements. Lot 7 was first conveyed from

the developer to Susan Dawn Hanson (**Hanson**) and Christopher Michael Hoy in 2004. Bohm purchased Lot 7 in 2017.

In August 2002, the "Declaration of Grant and Reservation of Easements for the [Subdivision]" (**2002 Declaration**) was recorded. The 2002 Declaration provided, inter alia, that Lot 7 is subject to Easement B, "being an easement for underground water and electrical utility purposes in favor of Parcels 10 and 36 through 40, and the Declarant," and "that upon construction of water and electrical utility facilities servicing Parcels 10 and 36 through 40 within Easements C-1 and D, then Easement B shall automatically terminate and be cancelled." Lot 7 is also subject to Easements C-1 and D. These easements are, in relevant part, for underground utility and drainage purposes for Lots 1 through 14. Lot 7 is further subject to Easement E, which, relevant here, is a "perpetual, non-exclusive easement" to Lots 1 through 14 for "pedestrian, equestrian[,] and vehicular access." The 2002 Declaration does not reference the Kuleana Lots.

In September 2003, the "First Restated Declaration of Covenants, Conditions and Restrictions for the [HGFE]" (**2003 Covenants**) was recorded. The circuit court made the following unchallenged FOFs with regard to the 2003 Covenants:

> [FOF] 28. The following provisions of Article VIII, Enforcement of This Declaration, of the [2003 Covenants] (Ex J-32 pp. 40 and 41) empower members of the [HGFE

Community Association (**HOA**)] (e.g., HGFE lot owners) to enforce the provisions of the [2003 Covenants]:

> Article VIII, Section 1. <u>Persons Entitled to Enforce this Declaration</u>. The following persons (the "Enforcing Persons") shall have the right to exercise any remedy at law or in equity for the enforcement of this Declaration: . [.] . b) Any Owner or any person to whom the Owner's rights of membership have been assigned.
>
> Article VIII Section 2. <u>Breach.</u> If any Owner or other person subject to this Declaration shall breach or fail to comply with any provision of this Declaration . . . <u>then each Enforcing Person (except as otherwise stated) shall have the following rights and remedies: c) To commence and maintain actions and suits to require the Owner to remedy such breach or non-compliance or for specific performance, or to enforce by mandatory injunction or otherwise all of the provisions of this Declaration, or to restrain or enjoin any breach or threatened breach of this Declaration, or to recover damages and/or d) to pursue all other rights and remedies available at law or in equity</u>[.]
>
> 1. In any action for the enforcement of the provisions of this Declaration or for damages or any other form of relief, the prevailing party in such action shall be entitled to recover from the losing party all of the prevailing party's costs, expenses and reasonable attorneys' fees.

[FOF] 29. **The [2003 Covenants];** prohibit construction without appropriate permits and consents, Ex. J-32, page 27; require the restoration of ground after the destruction of improvements (here the wall), <u>Id.</u>, page 29; **require the owners to use only designated access ways**, <u>Id.</u>, page 35; and prohibit the blocking or redirecting of drainage, <u>Id.</u>, page 40.

(Underscoring in original) (bold emphasis added.)

In 2011, Hanson and Haumea sued the developer for its failure to "relocate the then existing vehicular access easement to . . . Kuleana Lot 5 from . . . Lot 7 to Lot 3."[4] The circuit court found that Kuleana Lot 5 was burdened by Easement A, which

---

[4] This related case was docketed as Case No. 5CC111000075, and is herein referenced as the **Haumea Lawsuit.**

was a "20 foot wide easement for access and utility purposes in favor of Parcel 10 and the other Kuleana Lots." Moreover, the circuit court found that Lot 7 was "subject to" Easement B, an "access easement."

The circuit court found, in the Haumea Lawsuit, that Haumea had "installed or constructed above-ground structures and objects" on Easement A, for which Haumea did not have consent, approval, a permit, or a license to install or construct on Easement A. These structures and objects prevented portions of Easement A from being accessed, to the point that it blocked the connection of Easement B with Easement A, "and [had] the practical effect of forcing the actual driveway on Lot 7 to the west of where it should be, to the advantage of Haumea and the disadvantage of Hanson."

The circuit court entered judgment in favor of the developer, ordered Haumea to remove obstructions on Easement A, and declared that Haumea's "failure to remove the same constitute[d] a continuing interference with rights of [the developer] and others to the full use and enjoyment of Easement A." The circuit court ordered Haumea to "[r]estore Easement A to the condition it was in prior to installation or construction" of the obstructions within forty-five days after entry of judgment. A "Partial Satisfaction of Final Judgment" (**Partial Satisfaction**) was filed in February 2019 stating that

the removal of the obstructions installed on Kuleana Lot 5 had been "complied with and satisfied." The Partial Satisfaction did not state that Easement A had been restored to its prior condition.

Bohm filed its Complaint in the underlying case in October 2019. Bohm contended that the unrestored "grading and structures" within Easement A "had the practical effect of forcing Kuleana Lot owners to use a portion of Lot 7 to the west of Easement A, where there is no designated legal access, all to the advantage of Kuleana Lot 5 and disadvantage of Lot 7." Bohm sought injunctive relief, and compensatory and punitive damages, as a remedy for the trespass and "Illegal Access" caused by Oceanaire to Bohm's property.

Oceanaire filed a Counterclaim in which it sought "[r]eformation of [e]asement [a]reas," on the basis that "[t]he existing topography within the boundaries of the Easement 'B' area does not allow for construction of a roadway that can be used for access by Oceanaire as originally intended by the 1989 [Subdivision] Map and the Affidavit."

Following a bench trial, the circuit court concluded, inter alia, that Easement B was "automatically terminated," and that Oceanaire was illegally using an unpermitted access route on Bohm's property. The circuit court found that the 1989 Subdivision Map depicted Easement B as a "distinctive dog leg

7

that jogged to the east" running from the northern boundary of Kuleana Lot 5 to Hanalei Plantation Road. It found that an aerial photo from 2002 depicted that "the dog leg was gone," and that the dirt access road ran closer to the common boundary of Lots 7 and 8. The circuit court concluded that Easements C-1 and D were the proper access easements for Kuleana Lot 5.

The circuit court entered the Final Judgment in Bohm's favor. The circuit court enjoined Oceanaire "from continuing to [t]respass on [Bohm's] Lot 7," and "to remove the Illegal Access way." The circuit court awarded Bohm "no damages beyond the removal and restoration of the Illegal Access [way] on Lot 7." The circuit court awarded Bohm attorneys' fees in the amount of $678,826.91.

Oceanaire appealed, and Bohm cross-appealed.

## II.   Discussion

### A.   Oceanaire's Points of Error

We address Oceanaire's points of error as follows[5]:

(1) Oceanaire contends that the circuit court erred in finding and concluding that Easement B was terminated, such that Oceanaire was using an "Illegal Access" way on Lot 7. Oceanaire specifically challenges FOFs 24, 35, and 62, and COLs 7, 8, 11, and 29-31. These FOFs and COLs state,

---

[5]   We consolidate and renumber Oceanaire's points of error herein, to the extent it makes sense to do so for purposes of our analysis.

[FOF] 24. The Easement B referred to in the [2002] Declaration is shown on Exhibit "2" to the [2002] Declaration, which is a portion of the 2002 subdivision map (Ex. J-21), and which depicts Easement B as the "Existing Easement." This is the same Easement B shown on the 1989 subdivision map. There is only one Easement B in the HGFE subdivision.

. . . .

[FOF] 35. There is no evidence to support [Oceanaire's] claims for Declaratory Relief and Injunction. (Counts II and IV of the Counterclaim)

. . . .

[FOF] 62. As a result, Kathryn Mosely and her counsel agreed that Easement B had been terminated and that Easements D and C-1 were the proper access to the Kuleana Lots and that "Mr. Bohm's claims were in fact valid."

. . . .

[COL] 7. When the utilities to the Kuleana lots were removed from Easement B and placed on Easements D and C-1, among others, Easement B, as shown on the 1989 subdivision map and as described and depicted in the [2002] Declaration was automatically terminated.

[COL] 8. By virtue of long use of the accessway along the East boundary of Lot 7 (including a large portion of Easement C-1) and the Blockage Easement B by Lot 5, since at least 2008, Easement B had not been and could not be used for access to the Kuleana lots for many years and was legally abandoned.

. . . .

[COL] 11. Pursuant to the [2002] Declaration, Easements C-1 and D are the proper access easements for Kuleana Lots. [Bohm] has no access rights across Lot 7 other than Easement C-1.

. . . .

[COL] 29. Pursuant to unambiguous terms of the [2002] Declaration, Easement B automatically terminated when the utilities were removed and relocated from Easement B.

[COL] 30. By the time that the Complaint was filed herein, Easement B had been abandoned by long non-use and blockage by [Oceanaire].

[COL] 31. [Oceanaire] is estopped to deny the abandonment because [Oceanaire] never used Easement B and it caused the Blockage.

We review the circuit court's FOFs under the clearly erroneous standard, and COLs de novo under the right/wrong standard. Schmidt v. HSC, Inc., 145 Hawaiʻi 351, 360, 452 P.3d 348, 357 (2019). "A[n FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Id. (citations omitted). "[A] COL that presents [a] mixed question[] of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Chun v. Bd. of Trs. of the Emps.' Ret. Sys. of the State, 106 Hawaiʻi 416, 430, 106 P.3d 339, 353 (2005) (citations omitted).

We determine that the above FOFs are not clearly erroneous; they are supported by the record evidence, which includes Oceanaire's own admissions and the seller's disclosures. We note that it is within the province of the circuit court to weigh the evidence, and to assess the credibility of witnesses. Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

The evidence, as weighed by the circuit court, supports the circuit court's finding that Easement B is not the only remaining access easement, and that Oceanaire has never used Easement B as it is designated on the 1989 Subdivision Map

and referenced in the 2002 Declaration. Oceanaire also made binding judicial admissions, in its Counterclaim and First Amended Counterclaim, regarding the "impracticab[ility]" of "legal access solely within the Easement 'B' area," and the failure of Easement B to "satisfy the requirements of the County with respect to roadway safety standards." See Ching v. Dung, 148 Hawaiʻi 416, 427, 477 P.3d 856, 867 (2020) ("[A] party's factual allegation in a complaint or other pleading is a judicial admission which binds the party.") (citations omitted).

Oceanaire did not, moreover, challenge many FOFs that support the circuit court's ultimate conclusion that Easement B was terminated. These FOFs are therefore binding. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002). Relevant here:

> [FOF] 15. Originally, before the Kuleana lots were relocated, Developer's Parcel 10 [Kuleana Lot 5] was accessed from Hanalei Plantation Road via a dirt road. This road ran north-south from Hanalei Plantation Road with a distinctive dog leg that jogged to the east. A waterline was in place under this dirt road.

> [FOF] 16. In the 1989 consolidation-resubdivision, the dirt road was "designated" Easement "B" for access and utility purposes. HGFE Lot 7 was not yet in existence.

> [FOF] 17. However, **by 2002 an aerial photo shows that the dirt access road no longer followed Easement "B,"** the dog leg was gone and the road was located closer to the common boundary of HGFE lots 7 and 8. (Ex. J-30)

> [FOF] 18. **There is no evidence that Easement B was used for access after 2002.**

> [FOF] 19. **There is no evidence that the Illegal Access was used continuously for more than 20 years.**

> [FOF] 20. **By the time this suit was filed, the internal road from Hanalei Plantation Road to Lot 5 used most of Easement C-1, except where it turned onto and crossed over [Bohm's] Lot 7 (the "Illegal Access").** (Ex. J-26 Hennessy Map)
>
> . . . .
>
> [FOF] 23. The [2002] Declaration reserves Easement B "for underground water and electrical utility purposes" in favor of the Developer's Parcel 10 and the kuleana parcels (¶11a, p.5) and grants Easement B for the same purposes in favor of the same parcels (¶2, p.9).
>
> . . . .
>
> [FOF] 25. **Paragraphs 11a and 2 of the [2002] Declaration, mentioned above, state:** "<u>Provided, however, that upon construction of water and electrical facilities servicing Parcels 10 and 36 through 40 within Easements C-1 and D[,]</u> **Easement B shall automatically terminate and be cancelled**."
>
> [FOF] 26. The [2002] Declaration reserves and grants Easements E through G, shown on the 2002 subdivision map, for access, underground utility, and drainage purposes, in favor of the kuleana lots and other lots, utility companies and the [HOA]. These are the only <u>designated and granted</u> access easements in favor of [Oceanaire's] Lot 5 prior to the sale of the kuleana lots. By subsequent conveyance, Easement AU-1 was granted to kuleana lots for access.
>
> [FOF] 27. **The [2002] Declaration reserves Easements C-1 (on the East boundary of Lot 7) and D (on the West boundary of lot 8) for underground utility, drainage and access purposes in favor of the Kuleana lots and others.** (¶¶11e and 12d, p. 6).

(Underscoring in original) (bold emphasis added.)

Contrary to Oceanaire's contentions, the circuit court was not collaterally estopped from finding that Easement B was terminated because "[w]hether Lot 7 was burdened by Easement 'B' was a fact decided in the Haumea Lawsuit." The party asserting collateral estoppel has the burden of proving the following elements,

> (1) [T]he issue decided in the prior adjudication is identical to the one presented in the action in question;

12

> (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication[.]

Omerod v. Heirs of Kaheananui, 116 Hawaiʻi 239, 264, 172 P.3d 983, 1008 (2007) (citation omitted).

Oceanaire did not establish that the issue litigated here is identical to the issue presented in the Haumea Lawsuit. The Haumea Lawsuit did not concern the termination of Easement B, which is the primary focus of this litigation.[6] We therefore determine that the first element of the collateral estoppel test was not met.

For the foregoing reasons, the circuit court did not err in finding that Easement B was terminated.

(2) Oceanaire contends that the circuit court erred by failing to join the owners of Kuleana Lots 1-4 and Parcel 10 as necessary parties to the litigation. Oceanaire specifically challenges COL 4, which states that "[a]ll necessary and conditionally necessary parties have been joined in this action." We review a circuit court's decision regarding the joinder of parties under HRCP Rule 19 for abuse of discretion.

---

[6] Oceanaire conceded as much below. In its "Position Statement as to [Bohm's] Motion to Reassign Case," Oceanaire argued that "[t]he [Haumea Lawsuit] involved claims, brought by both [Bohm's] and Ocean[a]ire's predecessors in interest . . . for [the Subdivision developer's] purported failure to provide access to certain lots within the subdivision as promised." Oceanaire distinguished this case as "involv[ing] Ocean[a]ire's right of access over [Bohm's] property arising from a separate easement."

UFJ Bank Ltd. v. Ieda, 109 Hawaiʻi 137, 142, 123 P.3d 1232, 1237 (2005).

In Marvin v. Pflueger, 127 Hawaiʻi 490, 280 P.3d 88 (2012), the Hawaiʻi Supreme Court drew a distinction between indispensable parties and necessary parties. Marvin held that "only the defense of failure to join an *indispensable* party under [HRCP] Rule 19(b) is preserved from waiver by [HRCP] Rule 12(h)(2)." Id. at 502, 280 P.3d at 100. "[T]he defense of failure to join a *necessary* party under [HRCP] Rule 19(a) must be raised by the defendant in its answer or by motion" or it is waived. Kellberg v. Yuen, 135 Hawaiʻi 236, 251 n.12, 349 P.3d 343, 358 n.12 (2015) (emphasis added) (citation omitted).

Here, Oceanaire did not file a motion pursuant to HRCP Rule 12(h), and Oceanaire's Answer only included the defense of failure to join *indispensable* parties – it did not include a defense for failure to join *necessary* parties. Oceanaire thus waived its defense of failure to join, as *necessary* parties, the owners of Kuleana Lots 1-4 and Parcel 10.

(3) Oceanaire contends that the circuit court erred in granting Bohm's motion for partial summary judgment, and "[g]ranting [m]andatory [i]njunctive [r]elief [o]rdering Oceanaire to [i]mplement a [s]pecific [d]esign for [r]econfiguring the [a]ccess to Kuleana Lots 1 through 5 and Lot 10, [i]ncluding [u]se of [s]o-[c]alled 'Easement D.'" Oceanaire

14

specifically challenges FOFs 36-39, 42, 44, and 50, and COL 14, which state:

> [FOF] 36. In or about 2005, [Haumea], the owner of Kule[a]na Lot 5, constructed a house and improvements on the Lot 5, including a retaining wall along the boundary of Lot 5 and HGFE Lot 8. Later, this wall was extended by the owner of Kuleana Lot 5 further West along the boundary of HGFE Lot 7, resulting in a sheer four-foot drop in elevation from Lot 7 to Kuleana Lot 5.
>
> [FOF] 37. As a result of the grading and improvements on Kuleana Lot 5, the transition from the access way over HGFE Lot 7 onto Easement A was blocked by a four-foot cut, a wall, vegetation, and above-ground impediments.
>
> [FOF] 38. The grading on Lot 5 was not permitted by the County of Kauai or HGFE HOA. (Ex. J-37)
>
> [FOF] 39. Rather than use the access Easements designated by the [2002] Declaration, [Haumea], without permission, appropriated an access way across Lot 7, parallel to the common boundary of Kuleana Lot 5 and Lot 7 ("Illegal Access"). This, in turn, rendered the land below the appropriated access way unusable by [Bohm].
>
> . . . .
>
> [FOF] 42. The blockage is entirely on Kuleana Lot 5 and was created by Kuleana Lot 5.
>
> . . . .
>
> [FOF] 44. Because of this blockage, Kuleana Lot 5 was able to appropriate the east end of Easement A and incorporate it into Kuleana Lot 5 for [Oceanaire's] exclusive use.
>
> . . . .
>
> [FOF] 50. Four years later, when Defendant Oceanaire was purchasing Kuleana Lot 5, the above-reference[d] order and judgment had not been complied with. Although the wall was subsequently removed the other element [sic] so the order and judgment still have not been complied with.
>
> . . . .
>
> [COL] 14. The [circuit court] adopts the Palesh Solution[7] as the proper access to the Kuleana Lots on the

---

[7] The circuit court made the following unchallenged FOFs regarding the "Palesh Solution":

(continued . . .)

condition that Lot 7 sell and grant to the Kuleana lot owners an easement over the 102 square foot portion of Lot 7. [Bohm] indicated its acceptance of this condition at no additional cost to the Kuleana Lot owners if they accept access over Easements D and C-1.

The following test governs permanent injunctive relief:

> [T]he appropriate test in this jurisdiction for determining whether a permanent injunction is proper is: (1) whether the plaintiff has prevailed on the merits; (2) whether the balance of irreparable damage favors the issuance of a permanent injunction; and (3) whether the public interest supports granting such an injunction.

Pofolk Aviation Haw., Inc. v. Dep't of Transp. for the State, 134 Hawaiʻi 255, 261, 339 P.3d 1056, 1062 (App. 2014) (cleaned up). A mandatory injunction is generally disfavored by courts due to its severity, and "courts should deny [a mandatory injunction] unless the facts and law clearly favor the injured party." Stop Rail Now v. DeCosta, 120 Hawaiʻi 238, 244, 203 P.3d 658, 664 (App. 2008) (cleaned up).

---

[7](. . . continued)

[FOF] 63. Kathryn Moseley retained Cheryl Palesh of Belt Collins & Associates to design a road using Easements C-1 and D and to estimate the cost of construction of the road. This design and estimate are part of Exs. J-14 and P-11a (the "Palesh Solution").

[FOF] 64. The Palesh Solution utilizes a 102 square foot portion of Lot 7 to soften the curve of the access road off of Easement C-1 onto Easement A. The use of this small section had been agreed to by [Bohm] prior to the sale of Kuleana Lot 5 to [Oceanaire] as part of a tentative understanding with Kuleana Lot 5 and other Kuleana lot owners.

[FOF] 65. The [circuit court] finds that the Palesh Solution complies with applicable County standards and is reasonable.

Here, the circuit court found that Oceanaire's illegal access caused Bohm irreparable harm. The relative hardship test, which is also called "balancing the equities," applies where, as here, a "prior landowner has affirmatively violated a restrictive covenant and a subsequent purchaser is asked to bear the burden of a mandatory injunction to remove the violation." Pelosi v. Wailea Ranch Ests., 91 Hawaiʻi 478, 488, 985 P.2d 1045, 1055 (1999) (citations omitted).

The relative hardship test need not be applied, however, "where a property owner deliberately and intentionally violates a valid express restriction running with the land [o]r intentionally takes a chance." Sandstrom v. Larsen, 59 Haw. 491, 500, 583 P.2d 971, 978 (1978) (cleaned up). A mandatory injunction is "appropriate without considering the relative hardships to the parties" where a property owner affirmatively acts "in violation of a covenant of which they had actual and constructive notice." Royal Kunia Cmty. Ass'n ex rel. Bd. of Dirs. v. Nemoto, 119 Hawaiʻi 437, 451, 198 P.3d 700, 714 (App. 2008) (citation omitted). In such cases, mandatory injunctive relief is proper to "eradicate the violation" of a restrictive covenant. Id. at 450-51, 198 P.3d at 713-14 (citations omitted).

Pursuant to unchallenged FOFs 28 and 29, and COL 5, the 2003 Covenants "require the [Subdivision] owners to use only

designated access ways," and the provisions of the 2003 Covenants and 2002 Declaration are "binding upon the parties and Kuleana Lot 5 and Lot 7." Oceanaire continued to use the Illegal Access, in violation of Article VII, Section 2(b)(14) of the 2003 Covenants. And despite notice via the disclosures from Haumea, Oceanaire "t[ook] a chance" in failing to relocate access as ordered in the Haumea Lawsuit, and as it was advised to do by Haumea at the time it purchased Lot 5. See Sandstrom, 59 Haw. at 500, 583 P.2d at 978 (citation omitted).

We conclude that the circuit court did not err in finding that permanent injunctive relief was proper.

(4) Oceanaire contends that the circuit court erred in concluding that Bohm was the prevailing party, and on that basis, in awarding attorneys' fees to Bohm. Oceanaire specifically challenges COLs 20-23, which state:

> [COL] 20. [Bohm] is the prevailing party in this action.
>
> [COL] 21. The [2002] Declaration and [2003 Covenants] both provide for attorneys' fees and costs to the prevailing party regardless of the nature of the action.
>
> [COL] 22. In addition, this action involves the enforcement of the provisions of the HGFE subdivision's governing documents and HGFE is a planned community association within the meaning of HRS §[]607-14. Therefore [Bohm], as a member of the association, is entitled to reasonable attorney's [fees] and costs without regard to the 25% limit of HRS[]§ 607-14.
>
> [COL] 23. Further [Bohm] is entitled to costs as a matter of course under HRCP Rule 54(d)(1).

18

We review the circuit court's award of attorneys' fees and costs under the abuse of discretion standard. Gailliard v. Rawsthorne, 150 Hawai'i 169, 175, 498 P.3d 700, 706 (2021).

"For the purposes of awarding costs and attorney fees, a party need not sustain his entire claim in order to be a prevailing party." Rapozo v. Better Hearing of Haw., LLC, 120 Hawai'i 257, 261, 204 P.3d 476, 480 (2009) (cleaned up). In determining which party prevailed, the court must "first identify the princip[al] issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." Deutsche Bank Nat'l Tr. Co. v. Kozma, 140 Hawai'i 494, 498, 403 P.3d 271, 275 (2017) (citation omitted).

Bohm is the prevailing party. Bohm sought to enjoin Oceanaire from illegally accessing Bohm's property, and the circuit court to order Oceanaire to "immediately remove any impediment within Easement A," restore Easement A so that it may be used as an access road for the Kuleana Lots, and "repair and restore the Illegal Access area on Lot 7." Final Judgment was entered in favor of Bohm and against Oceanaire on all counts of the Amended Counterclaim, and entered in favor of Bohm and against Oceanaire on Counts I and II of the Complaint. Although

the circuit court did not award monetary damages,[8] it did award

Bohm relief "in the form of removing and restoring the Illegal

Access."

Hawaii Revised Statutes (**HRS**) § 607-14 (2016), which

allows for attorneys' fees in actions in the nature of

assumpsit, provides, in relevant part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]
>
> . . . .
>
> The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.
>
> **Nothing in this section shall limit the recovery of reasonable attorneys' fees and costs by a planned community association and its members** in actions for the collection of delinquent assessments, the foreclosure of any lien, or the **enforcement of any provision of the association's governing documents**, or affect any right of a prevailing party to recover attorneys' fees in excess of twenty-five per cent of the judgment pursuant to any statute that specifically provides that a prevailing party may recover all of its reasonable attorneys' fees. **"Planned community association" for the purposes of this section means a nonprofit homeowners or community association existing pursuant to covenants running with the land.**

(Emphasis added.)

---

[8] It is immaterial that the circuit court did not award monetary damages to Bohm, or that "neither party . . . completely prevailed as to the location of the driveway." Nelson v. Hawaiian Homes Comm'n, 130 Hawaiʻi 162, 165, 307 P.3d 142, 145 (2013) ("The prevailing party is the one who prevails on the disputed main issue" even though "the party [did] not prevail to the extent of his original contention.") (cleaned up).

The circuit court did not err in concluding that the "planned community association" exception under HRS § 607-14 applies, and that Bohm could therefore recover attorneys' fees "in excess of twenty-five per cent of the judgment."  The HGFE Community Association is a planned community association.  Its 2003 Covenants state that all of the HGFE lots, inclusive of the Kuleana Lots, are "subject to the covenants, conditions, restrictions[,] and limitations set forth" in the 2003 Covenants, and all "covenants, conditions, restrictions[,] and limitations shall constitute covenants running with the land."[9] Oceanaire does not challenge the circuit court's FOF that the 2003 Covenants "empower members of the HOA (e.g., HGFE lot owners) to enforce the provisions of the [2003 Covenants]."

---

[9]    Article VIII, Section 2(c) of the 2003 Covenants authorizes any Subdivision owner to,

>    commence and maintain actions and suits to require the [breaching] Owner to remedy such breach or non-compliance or for specific performance, or to enforce by mandatory injunction or otherwise all of the provisions of [the 2003 Covenants], or to restrain or enjoin any breach or threatened breach of [the 2003 Covenants], or to recover damages[.]

The 2003 Covenants also permit the prevailing party "[i]n any action for the enforcement of the [2003 Covenants'] provisions," or "for damages or any other form of relief," to recover "costs, expenses[,] and reasonable attorneys' fees."

The 2002 Declaration also establishes that the HGFE Lots are subject to enumerated "limitations, restrictions, covenants, conditions, reservations[,] and easements, which shall run with the land and shall be binding upon all persons."

The circuit court therefore did not abuse its discretion in awarding attorneys' fees to the prevailing party Bohm.

**B.    Bohm's Points of Error**

Bohm contends that the circuit court erroneously denied Bohm damages, and challenges COL 15 and section F of the circuit court's Order.  COL 15 states: "Trespass on Lot 7 and blockage of Easement A should be enjoined and removed and the ground restored.  [Bohm] failed to carry its burden of proof by a preponderance of evidence as to damages and [the circuit court] awards none."  Section F provides, "[Bohm] is awarded no damages beyond the removal and restoration of the Illegal Access on Lot 7."  We address Bohm's specific contentions as follows:

(1) Bohm contends that the circuit court erred by not awarding monetary damages to Bohm and that such damages should have been calculated "in the form of reasonable rent for the use of Bohm's property," so "the rent for the use of that portion of land is owed to Bohm."  In support of this contention, Bohm points to the trial testimony of Steven Moody (**Moody**) and John Bohm.  Moody testified, as a real estate broker,[10] that he was listing Lot 7 for $4,000,000, but that he would have listed the

_____

[10]    The circuit court's unchallenged FOF 82 states, "Steven Moody's testimony as to value was limited to his opinion as a real estate broker." The circuit court ruled that Moody was not allowed to testify as a real estate appraiser.

property for $4,500,000 had there been no dispute regarding the access easement. Moody further testified that John Bohm purchased Lot 7 for $1,000,400, and that Lot 7 was presently being rented to a tenant, for a monthly rent of $3,000, pursuant to a December 1, 2017 rental agreement.

John Bohm testified regarding damages for the interference with and loss of use of the property, which he represented to be $348,000 for the prior three years in total for an annual rate of $116,000. John Bohm stated the following to explain why he was owed this "rent" as damages:

> So this is my lot and there's the ability to CPR.[11] Well, I can't use that part of the lot because there's -- as we've established, [Oceanaire's] guests, his employees, contractors, and everybody else are driving across it and so that keeps me from using the second CPR lot of the property. And because -- so basically taken over for his purposes the second half of my CPR on the bottom half. So I believe that the property is in value of 4 million or more, so half of it -- even though it's the more important and more valuable half, is at least $2 million. And then the rate that a property like that or the cap rate published that's available publicly is 5.8 percent times three years is 348,000, so it's basically the rent rate.

"[T]he measure of damages in trespass actions is such sum as will compensate the person injured for the loss sustained, or for damages that have occurred or can with certainty be expected to occur." Krog v. Koahou, No. SCWC-12-0000315, 2014 WL 813038, at *3 (Haw. Feb. 28, 2014) (mem. op.) (citation omitted). "Damages are calculated as the sum

---

[11] With regard to a CPR, John Bohm testified that he did not hire anyone to do a CPR.

necessary to make the victim whole, including damages for loss of use of the property." Id. (cleaned up). "Generally, we do not disturb the [FOFs] of the [circuit] court on the issue of damages absent a clearly erroneous measure of damages." Ching, 148 Hawai‘i at 427, 477 P.3d at 867 (citation omitted).

The circuit court, in declining to award damages, explained,

> As far as value of the property and the use of the easement, this was a difficult calculation to try and accomplish mainly because if the [c]ourt is correct, the property was bought for 1.4 million and right now it's being listed at 4.5 million. I believe it was Mr. Moody's, **Steve Moody, he testified that there might be a $500,000 discount because of the litigation or the lawsuit. The [c]ourt finds that that was speculative.** If anything, the delay has led to the increase in value and that is a windfall or profit for [Bohm].
>
> So the delay in whatever litigation has created -- and right now I'm not even clear that the delay in the sale was created by the litigation. **The delay in the sale could have been the 4.5 million price tag that is on the property. There's no clarity on that. And so regarding the damage for use of the property, the [c]ourt finds no damage because [Bohm] hasn't been able to prove that damage.**

(Emphasis added.)

In considering whether to award damages, the circuit court thus considered evidence, including the testimony of Moody, which it found to be speculative. We will not second guess the circuit court's weighing of the evidence presented at trial, and its determinations with regard to the credibility of witnesses. Porter v. Hu, 116 Hawai‘i 42, 59-60, 169 P.3d 994, 1011-12 (App. 2007) ("An appellate court will not pass upon the

trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.") (citation omitted).  We determine that the circuit court did not err by not awarding monetary damages.

(2) Bohm contends that the circuit court "erroneously refused to award [monetary] damages because it presumed that (a) others were also wrongfully trespassing, (b) an allocation or apportionment among all trespassers was necessary, and (c) it could not determine how to apportion the damages among Oceanaire and the neighbors that might also be trespassing."

As the circuit court explained,

> [O]ne of the things that the [c]ourt couldn't calculate and **there was no testimony was how much use each kuleana lot used that easement.**  And what I mean by that is they couldn't say a certain percentage was for [Kuleana] Lot 5, a certain percent was for Lot 4, and a certain percentage was for the other lots.  There's no calculation on that.  It's unclear.  And because of that, the [c]ourt is not able to allocate -- first of all, the [c]ourt cannot determine what the damages for the so-called trespass or use of the curve is.  It's unclear.
>
> And **even if there was some kind of damage, the [c]ourt would have to allocate that between the kuleana lot owners** and other than just dividing it a certain way -- that would be, you know, doing the 20 percent -- **that would be speculative because I don't know how many cars each property has and how many times the people at the kuleana a [sic] lots drive up and down.**

(Emphasis added.)

Here, the circuit court found that whether or not Bohm was entitled to damages was "speculative" because there was no evidence as to Oceanaire's use of the Illegal Access on Bohm's

property vis-à-vis the other Kuleana Lot owners.  Bohm sought damages based on Moody and John Bohm's testimony, which did not address the other lot owners' use of the Illegal Access, and how a damages award could be apportioned to account for those lot owners' contribution to the harms.  The circuit court thus determined that Bohm did not introduce sufficient evidence to establish its entitlement to damages.  We determine that the circuit court did not err in reaching this conclusion.

(3) Bohm contends that the circuit court erred by not awarding punitive damages.  "Award or denial of punitive damages is within the sound discretion of the trier of fact.  The trier of fact's decision to grant or deny punitive damages will be reversed only for a clear abuse of discretion."  Kekona v. Bornemann, 135 Hawaiʻi 254, 262-63, 349 P.3d 361, 369-70 (2015) (citation omitted).

It is axiomatic that "[s]omething more than the mere commission of a tort is always required for punitive damages."  Ass'n of Apartment Owners of Newtown Meadows ex rel. Bd. of Dirs. v. Venture 15, Inc., 115 Hawaiʻi 232, 297, 167 P.3d 225, 290 (2007) (cleaned up).

> In determining whether an award of punitive damages is appropriate, the inquiry focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his conduct.  In the case of most torts, ill will, evil motive, or consciousness of wrongdoing on the part of the tortfeasor are not necessary to render his conduct actionable.  In a negligence action, for example, the defendant may be required to make compensation if it is

26

> shown that he failed to comply with the standard of care which would be exercised by an ordinary prudent person, no matter how innocent of desire to harm.  In contrast, **to justify an award of punitive damages, a positive element of conscious wrongdoing is always required.**  Thus, **punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment.**

Id. (emphasis added) (cleaned up) (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 7, 780 P.2d 566, 570-71 (1989)).

> In order to recover punitive damages, **the plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations,** or where there has been some **wil[l]ful misconduct** or that entire want of care which would raise the presumption of a conscious indifference to consequences.

Id. (emphasis added) (cleaned up).

The circuit court made no findings that Bohm proved, by clear and convincing evidence, that Oceanaire acted "wantonly[,] . . . oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations," or engaged in "wil[l]ful misconduct."  See id. (citation omitted).  Nor does the record evidence, as weighed by the circuit court, show that Oceanaire's actions here constituted "a positive element of conscious wrongdoing."  See id. (cleaned up).  We determine that the circuit court did not abuse its discretion by not awarding punitive damages.

## III. Conclusion

For the foregoing reasons, we affirm the circuit court's Amended Final Judgment and Order.

DATED: Honolulu, Hawaiʻi, July 17, 2025.

On the briefs:

Leroy E. Colombe,
for Defendant/
Counterclaimant-Appellant/
Cross-Appellee.

Wayne Nasser,
Kevin W. Herring,
for Plaintiff/Counterclaim
Defendant-Appellee/
Cross-Appellant.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge